Argued and submitted November 25, 1998, affirmed April 7, 1999

In the Matter of the Marriage of

Elaine B. COUGHLIN,
*Respondent,*

*and*

Tom COUGHLIN,
*Appellant.*

(D842153; CA A96536)

979 P2d 292

Frank Porcelli, Jr. argued the cause for appellant. With him on the brief were Bradley C. Blyth and Blyth, Porcelli & Blyth.

Gregory Soriano argued the cause for respondent. With him on the brief was Soriano & Associates.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Warren, P. J., retired.

**EDMONDS, P. J.**

In this domestic relations case, husband appeals from a decision that allowed wife's motion to terminate her obligation to pay him spousal support and implicitly denied his motion to increase spousal support. ORS 107.135 (1995). We affirm.

Husband and wife were married in 1971, and their marriage was dissolved in 1986. In a memorandum opinion issued before the entry of the original dissolution judgment, the trial court indicated that husband was

> "permanently disabled as the result of a brain aneurysm which he suffered in 1983. As a result of the aneurysm he has received frontal lobe brain damage and has been declared to be mentally disabled by the Social Security Administration. It is not likely that he will ever be gainfully employed. [Husband] receives from the Social Security Administration the sum of $702 per month and [wife] receives from that agency the sum of $357 per month on behalf of the children."[1]

The court also found that the couple's three children would require support for at least 17 years if the youngest were to attend college. The court explained that an award of permanent spousal support of $200 per month combined with his Social Security benefits would give husband a "disposable income of approximately $900 per month which [was] barely sufficient for his needs." Accordingly, the original dissolution judgment awarded wife custody of the couple's three children, but no child support, and awarded husband permanent spousal support of $200 per month.

In January 1996, wife filed a motion to terminate husband's spousal support. According to wife's accompanying affidavit, a substantial change in circumstances since the original judgment had occurred because the oldest child's Social Security benefits had been terminated when he turned 18 years of age and he was presently attending college.[2]

---

[1] Wife's amended uniform support affidavit that was admitted at the modification hearing appears to indicate that she was receiving $520 per month in Social Security income.

[2] At the time that the trial court heard the motion to terminate spousal support, the parties' son was 19 years of age and their daughters were 17 and 15 years of age.

Thereafter, husband filed a cross-motion to increase wife's spousal support obligation to $500 per month. Husband indicated in his accompanying affidavit that he remained totally and permanently disabled, that he was no longer receiving income that had been available to him at the time of the original judgment and that wife's income had substantially increased.

At the hearing, wife testified that, at the time of the dissolution hearing, her children were receiving Social Security benefits that were contemplated to continue until the age of 23, so long as they were in school. However, according to wife, the law changed, which has and will result in termination of each child's benefits when each turns 18 years of age.[3] She indicated that her son was attending college and that both her daughters planned to attend college as well.

Husband testified that he currently lives in Ashland on his own in an apartment. In order to attend the hearing, he traveled unaccompanied from Medford to Portland by bus and stayed in a motel. He was able to travel from the motel to the courthouse unassisted. Husband also testified about his work history during the previous 10-year period. He said that he had shined shoes for a men's store but could not recall the length of time that he held the position or his earnings from the job. Also, he had loaded trucks for minimum wage while living in Idaho. Husband had injured his back in an automobile accident after the original judgment. After that injury, he was only able to lift approximately 25 pounds. He also had worked at a gas station for two hours but was unable to place the nozzle from the pump into the only car he attempted to

---

[3] Husband does not challenge wife's assertion that a change in the law after the dissolution judgment eliminated Social Security benefits for children over 18 who were full-time students. The trial court also found that the failure of the children to receive Social Security benefits while they were in college was not contemplated at the time of the original judgment. Neither party nor the trial court has furnished a citation to the federal law that created the change. Our independent research appears to indicate that benefits for children attending post-secondary institutions were eliminated by the Omnibus Budget Reconciliation Act of 1981, Pub L No 97-35, section 2210, 95 Stat 357, 841. However, husband did not contest at the hearing the representation that wife was no longer receiving the benefits that had been anticipated at the time of the dissolution judgment. The trial court and we accept his acquiescence as to that claim of a change of circumstances.

service. While living in Ashland, he had been employed in telephone sales for two days but had been unable to complete the training program for the job because he could not remember the information that he was required to learn. Husband testified that he had applied for other jobs but had been unable to obtain employment. Husband contacted the State of Oregon Job Placement Service, but the service had not found him employment. However, he testified that "[i]t didn't occur to [him] to go to Vocational Rehabilitation [and that he would] check into that when [he gets] back."

Husband also described his mental condition:

"Q. Has that, the condition of your mental faculties, changed at all since that surgery?

"A. I am a lot brighter now than I was back then.

"Q. You are?

"A. I can finish a sentence and do all kinds of stuff.

"Q. You couldn't finish out a sentence before?

"A. No. I think it's a major quantum leap between what I was then, after I got out of the hospital, and now."

Although husband testified that he desires to work, he said, "I can't remember things well enough from day to day to keep a constant flow going. I've tried and I just can't do it. No employer that I've ever met wants to retrain you every day[.]"

Additionally, wife testified about husband's ability to work after the aneurysm and before the dissolution:

"Q. In terms of when [husband] was at home prior to the dissolution, did he work at a vocational rehabilitation placement service?

"A. It was St. Vincent DePaul, yes, and it was primarily to get the qualification for disability.

"Q. In terms of his ability to work?

"A. Correct.

"Q. And what he could do?

"A. Right.

"Q.   And [husband] performed that job capably, didn't he?

"A.   No. They decided for the purposes of disability that he was unemployable. However, I was told that I could have a vocational rehab counselor work with him and they would see to — you know, they would help us find something that he could do after the disability was determined, but his mother wanted nothing to do with it."

Wife also testified that husband's condition had improved since 1986 and she believed that husband could hold a job in which he could earn the amount that he was currently receiving as spousal support:

"Q.   Now, in terms of [husband's] desire to work, you saw him testify today. Has he always been somebody [who has] been pretty verbal?

"A.   Yes. And I would have to say, agree with [husband], that I see tremendous improvement since ten years ago.

"Q.   Since 1986?

"A.   Yeah.

"Q.   Did he have difficulty speaking at that time?

"A.   Yes, he did.

"Q.   Did he have difficulty in being able to think about things and communicate things?

"A.   Well, * * * the best way I could explain it is I was the one that brought him to court. I dressed him and got him ready to go to court. He was able to do it today by himself."

Carl Sargent, a transition services program coordinator with the Beaverton School District, develops jobs and finds employment for individuals with disabilities. He testified that there is a wide range of employment opportunities for individuals with severe disabilities. He testified that while short-term and long-term memory loss are barriers to finding employment, "there's a place for everyone, regardless of the disability." Sargent spoke with wife and one of husband's friends about husband's circumstances. Also, he

observed husband at the hearing. However, during his testimony, the following exchange occurred when husband's counsel asked questions in aid of objection regarding Sargent's opinion testimony:

"[Q.] Well, sir, you've never conducted an evaluation, you haven't talked to [husband]?

"[A.] No.

"[Q.] You've only seen him walk around here. Do you honestly believe that you are qualified to render an opinion as to his employability, knowing absolutely nothing about him?

"[A.] Not him specifically, no."

In its oral ruling terminating husband's spousal support, the trial court said:

"I believe that [husband] has improved substantially, from his own testimony, that of his former spouse, and also as I evaluate his performance here today and what we hear about him against the tenor of Judge Bonebrake's opinion from 1986. From all of those, I believe that there has been a substantial improvement in his circumstances and in his employability."

The trial court's decision contained the following findings:

"1.  [Husband] objected to any testimony being offered under ORS 107.407 and ORS 107.412, as [wife's] Motion and Order to Show Cause did not specifically plead the [a]forementioned statutes. The Court sustained [husband's] objection, but did indicate over [husband's] continuing objection, that the testimony would be received as to [husband's] ability to be employed and earning capability, as a change in circumstances to modify the spousal support judgment.

"2.  [Husband's] circumstances have changed and his mental capabilities have improved since the time of the dissolution judgment. [Husband] wants to find employment and appears to the Court to be employable.

"3.  Since the time of the dissolution of marriage in 1986, the employment of disabled persons has increased based in part on the American Disability Act and the hiring

of disabled persons by employers. [Husband] has the appropriate opportunities to find employment and become self-supporting. [Husband] should contact the Vocational [Rehabilitation] Department of the State of Oregon to seek training and assistance in obtaining employment.

"4. The cost of post-secondary education has dramatically increased since the time of the dissolution of marriage. Social Security benefits now terminate on the eighteenth (18) birthday of the child. [The children] will not receive child social security support while they are children attending school, as defined under ORS 107.108 * * *, which was not contemplated at the time of the dissolution."

On appeal, husband contends that the trial court erred by: (1) admitting and considering evidence of his employability when that ground was not raised in wife's motion and affidavit to terminate support; (2) granting wife's motion to terminate spousal support based on the findings that he was employable and that college expenses had increased; and (3) denying his motion to increase wife's spousal support obligation. Wife counters that it was proper to admit evidence of employability and that, even if the trial court erred in this respect, the error was harmless because the increase in higher education costs and the children's loss of Social Security benefits were independent grounds sufficient to support the trial court's decision to grant wife's motion.

■■ "Under ORS 107.135, there must be a substantial, unanticipated change in a party's circumstances before the court may set aside, alter or modify spousal support." *Gohlman and Gohlman,* 151 Or App 93, 98, 949 P2d 732 (1997). Under ORS 107.135(1) and (2) (1995), the trial court has the power to modify an award of spousal support based on a substantial change in a party's economic circumstances.[4] ORS 107.135(3) (1995) provides, in part:

"In considering under this section whether a change in circumstances exists sufficient for the court to reconsider

_____

[4] ORS 107.135 is not operative until December 31, 2001. Or Laws 1997, ch 746, § 1. Oregon Laws 1997, chapter 746, section 116 operates in lieu of ORS 107.135 and is repealed on December 31, 2001. We cite ORS 107.135 (1995) because it was in effect when wife filed her motion and the trial court issued its decision.

spousal or child support provisions of a decree, the following provisions apply:

"(a) The court shall consider income opportunities and benefits of the respective parties from all sources * * *[.]"

The movant is confined to the grounds raised in his or her motion to modify the award. *See Brown v. Brown,* 4 Or App 621, 624, 481 P2d 643 (1971) (holding that, in the context of a motion to modify the custody provisions of a dissolution of marriage judgment, the moving party is confined to the matters he or she alleges and the adverse party may object to evidence that tends to prove grounds that were not alleged).

Here, the grounds on which the trial court terminated husband's spousal support included husband's improved employability and the unanticipated increase in higher education costs in light of the fact that each child's Social Security benefits have terminated or will terminate on his or her eighteenth birthday. Because husband's employability was not a ground raised by wife's motion, it was inappropriate for the trial court to grant relief on that basis. However, the termination of the children's Social Security benefits was raised in wife's motion and, based on husband's acquiescence, constitutes a substantial, unanticipated change of circumstances on the record before us.

Once the trial court determined that there was a substantial, unanticipated change of circumstances, it was required to fashion an equitable remedy in light of all the relevant evidence before it. *See State ex rel Johnson v. Bail,* 325 Or 392, 396-97, 938 P2d 209 (1997) (requiring a two-step inquiry to determine whether to modify child custody under ORS 107.135). Both wife and husband moved to modify the spousal support award. By his motion, husband put in issue his ability to earn income. Under ORS 107.135(3) (1995), the trial court correctly admitted and considered the relevant evidence of husband's employability in the context of determining the remedy that it would fashion in light of the substantial, unanticipated change of circumstances that arose from termination of the children's Social Security benefits. OEC 401.

Thus, we turn to the final step of the inquiry. Although our review of this issue is *de novo*, ORS 19.415(3), we said in *McCoy and McCoy*, 28 Or App 919, 924-25, 562 P2d 207, *mod* 29 Or App 287, 563 P2d 738 (1977):

"[W]eight should be afforded to the trial court's findings any time the opportunity to see and hear witnesses is important. The amount of weight depends on the degree of importance. * * *

"* * * [T]here are many situations where observing the witness may be vitally important although there is neither conflict in the testimony nor any substantial question of truth or falsity. This is particularly pertinent in domestic relations cases where delicate human relationships are at stake. The witnesses' sincerity, conviction, self-reliance or discipline, temperament, and other personality traits may be the pivotal concern. * * *

"Appellate courts in Oregon have also consistently given weight to the trial courts in fashioning equitable remedies. In many instances deference is required because the remedy directly depends on weighing evidence where firsthand observation of witnesses is crucial. The awarding of child custody and visitation rights are obvious cases in point. * * * Similarly, in a spousal support dispute the best evidence for determining whether a party's alleged ailments are a fanciful or real impediment to employment is the trial judge's opportunity to observe the party."

■    Here, there was conflicting testimony regarding husband's employability. Husband testified that, although he had improved since 1986 and desired to work, his memory problems prevented him from being employed. Wife disagreed and testified that she believed that husband was employable. The trial court found, based in part on its observations of husband during the hearing, that there had been substantial improvement in his mental condition. In our *de novo* review, we give deference to the trial court's finding because it was in the best position to weigh the conflicting evidence. Accordingly, we agree that the termination of each child's Social Security benefits upon turning 18 years of age constitutes a substantial change in circumstances that was not contemplated at the time of the original judgment and

that, in light of husband's improved employability, the appropriate remedy is termination of husband's spousal support.

Because of our disposition of the case, we do not need to address husband's remaining assignment of error.

Affirmed.