Argued and submitted June 5; resubmitted en banc September 19, affirmed October 9, 2002, petition for review allowed February 11, 2003 (335 Or 195)

In the Matter of the Marriage of

Larry WEBER,
*Appellant,*

*and*

Marilyn WEBER,
*Respondent.*

C95-1232DR; A113178

56 P3d 406

J. Michael Alexander argued the cause for appellant. With him on the briefs was Swanson, Lathen, Alexander & McCann, PC.

Gary Zimmer argued the cause for respondent. With him on the brief was Zimmer & Bunch LLC.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, Brewer, and Schuman, Judges.

BREWER, J.

Landau, J., dissenting.

**BREWER, J.**

Husband appeals from a judgment modifying a previous judgment dissolving the parties' marriage by increasing the amount of husband's monthly support obligation to wife. On *de novo* review, we affirm.

The parties were married in 1971 while in their junior year of college. At the time of the dissolution in 1995, both parties were 45 years old, and their two sons were 14 and 10, respectively. Wife obtained a master's degree in special education during husband's first two years of medical school. Husband's medical training lasted a total of seven years, and wife provided family support through teaching employment during the remaining five of the seven years. When husband entered the workforce as a physician, the parties agreed that wife would stay at home to start their family and raise the children. Wife was a stay-at-home parent for the remainder of the marriage—approximately 14 years.

During the last six years of the marriage, husband's professional income, including a $30,000 annual pretax contribution to his retirement plan, averaged more than $260,000 per year. The parties enjoyed a lifestyle commensurate with that level of income, including many vacations, a substantial gift and entertainment budget, and late-model vehicles.

In 1994, after filing a petition to dissolve the parties' marriage, husband told wife that his income for that year would be drastically reduced because of changes in his practice that had resulted in a substantial reduction in his workload. In a letter to wife, husband stated that his 1994 practice income likely would be less than $150,000 and that "the bottom [was] not in sight." Husband's attorney restated that position in two letters to wife's attorney, and husband provided letters from other physicians with whom he practiced affirming that there was little or no expectation that husband's income would return to its previous level.

Based on the foregoing information, the parties agreed to a stipulated judgment of dissolution that presumed an income level of $150,000 for husband. That presumed

income was not explicitly posited in the spousal support provision of the judgment, but the child support worksheet filed with the judgment expressly included it. The judgment presumed that wife's gross monthly income was $823. The parties agreed that husband would pay $3,560 per month in spousal support for four years beginning in June 1995 and that, thereafter, support would continue indefinitely in the amount of $2,500 per month. Husband agreed not to seek a reduction in spousal support for the first four years after the judgment was entered should wife remarry, cohabit with another person, or obtain employment. Husband was required to pay child support for each child until the last day of July following the child's graduation from high school. Thereafter, husband was to be solely responsible for the cost of four years of college for each child. The parties agreed that when the older child graduated from high school, child support would be recalculated without the parties having to show an unanticipated, substantial change of circumstances.

In September 1999, after the parties' older son graduated from high school, husband filed a motion to modify his child support obligation. In response to that motion, and particularly with reference to the income information provided by husband, wife filed a motion to modify the judgment to increase husband's spousal support obligation. Information disclosed in the modification proceeding showed that husband's income and standard of living had, by 1997, returned to their pre-1994 levels. From 1997 through 1999, husband's pretax income averaged $249,000 and, at trial in this proceeding, husband testified that he expected his year-2000 income to range between $240,000 and $270,000. Husband testified that he had taken several foreign vacations since the dissolution and had purchased a new vehicle. Husband also testified that he had not done any additional training or taken any courses to improve his skills or earning capacity since the dissolution judgment was entered in 1995.

At the time of the modification hearing in 2000, wife was a half-time public school teacher earning $1,566 per month. Wife also was attempting to establish herself as an artist but had income averaging only $60 per month from that work. In addition, wife had passive income of $220 per month and spousal support of $2,500 per month, yielding

total monthly income of about $4,300. Wife testified that her lifestyle had deteriorated since the dissolution; she had taken fewer vacations than before, she had traded her late-model vehicle in for an older car, and she now bought her clothes at resale shops.

There was no evidence in the modification proceeding that, in negotiating the stipulated judgment of dissolution in 1995, husband had misrepresented his then-current income or that his expectation and assertion that it would not increase in the future were unreasonable.

After hearing the evidence in the modification trial, the trial court found and concluded:

> "In the several years before [dissolution], [husband] earned an average of approximately $260,000 per year. At dissolution, he earned $150,000 to $190,000 per year. Spousal and child support were based on the reduced income. * * *
>
> "* * * * *
>
> "Over the past several years, [h]usband has averaged approximately $260,000 per year in income which is about the same as he earned during the several years before dissolution. * * *
>
> "This is not a subsistence case; it is a standard of living case. Wife is not starving. Husband's monthly expenses reveal a comfortable standard of living, roughly comparable with that of the marriage. Wife lives substantially below the marital standard of living. Now that [h]usband has resumed that lifestyle, [w]ife is entitled to spousal support based on that lifestyle.
>
> "* * * * *
>
> "* * * A cynical divorce practitioner might argue that a pre-dissolution dip in a husband's income is to be expected and a resumption post-dissolution is not unexpected. That may be true in many cases. Here, however, the dip was attributed to cost-cutting pressures in the medical marketplace that were common knowledge at the time. Husband presented compelling evidence at the time that he was suffering and would continue to suffer the above-noted substantial decrease in income due to these market forces. Under these circumstances, his resumption of the marital income level is an unanticipated and substantial change."

The court ultimately concluded that wife was entitled to an increase in spousal support, and it set indefinite support in the amount of $4,000 per month in order to permit wife to enjoy a standard of living not overly disproportionate to the marital standard.

On appeal, husband makes two related assignments of error. First, he asserts that the trial court erred by admitting evidence of the predissolution circumstances of the parties, particularly evidence relating to the negotiations culminating in the stipulated judgment. Second, husband contends that the post-dissolution increase in his income did not, standing alone, constitute a change of circumstances authorizing an increase in his spousal support obligation.

Husband's first assignment of error requires little discussion. Husband acknowledges that he has raised that assignment of error out of an "abundance of caution" in order to avoid a possible preservation of error problem with respect to his second assignment of error. He states that the "claimed evidentiary error is essentially procedural in nature, and that the substantive issue [raised by the second assignment of error] is determinative." Because the parties agree that the second assignment of error is dispositive, we begin and end our discussion with that issue.

Husband begins by noting that the only evidence of a change of circumstances is his post-dissolution increase in income. He argues that the Supreme Court and this court repeatedly have held that such an increase, standing alone, does not justify an increase in spousal support. He asserts that the trial court created an impermissible exception to that rule where the obligor's increased income "does not exceed an income level maintained at some point in the marriage." As husband sees it, the trial court's reasoning is flawed because, first, wife had the opportunity, in the original dissolution proceeding, to litigate the issue of support based on husband's earning history and future earning capacity. Having failed to do so, husband contends, wife should not be permitted to do so now. Second, husband asserts, under the trial court's reasoning, any post-dissolution increase in an obligor's income logically would qualify as an unanticipated change of circumstances justifying an

increase in support, regardless of whether it was preceded by a significant decrease. Because the exception has no logical limit, husband urges, adopting it would eviscerate the general rule. That rule, according to husband, appropriately discourages serial litigation of disputes over provision to the obligee of a lifestyle that is not overly disproportionate to the standard enjoyed during the marriage.[1]

Wife responds that the general rule on which husband relies has no application here, because "[husband's post-dissolution] and present earning capacity is based entirely on the efforts of Husband and Wife during the marriage." Wife also contends that, because at the time of dissolution the parties reasonably believed that husband's reduced income level would persist, the trial court was not authorized to award her a higher level of support than the amount provided in the dissolution judgment. Therefore, she asserts, her motion to modify the spousal support award did not constitute an attempt to relitigate circumstances that existed at the time of dissolution.

■ "Under ORS 107.135, there must be a substantial, unanticipated change in a party's circumstances before the court may set aside, alter or modify spousal support." *Gohlman and Gohlman*, 151 Or App 93, 98, 949 P2d 732 (1997).[2] The precise aspect of the change of circumstances rule that is before us presents an issue of first impression,

---

[1] Husband does not assert that the amount of support awarded by the trial court was unreasonable. He only challenges the sufficiency of the evidence to establish the existence of a change of circumstances. Therefore, we limit our review to that question.

[2] ORS 107.135(3) (1999) provided, in part:

"In considering under this section whether a change in circumstances exists sufficient for the court to reconsider spousal or child support provisions of a decree, the following provisions apply:

"(a) The court * * * shall consider income opportunities and benefits of the respective parties from all sources, including but not limited to:

"(A) The reasonable opportunity of each party, the obligor and obligee respectively, to acquire future income and assets."

ORS 107.135(3) was enacted in essentially its present form in 1987. Or Laws 1987, ch 885, § 3. We refer to the 1999 version of the statute because it was in effect when wife filed her motion and the trial court made its decision. The 2001 amendments to ORS 107.135 did not modify subsection (3). Or Laws 2001, ch 104, § 32; ch 203, § 4; ch 334, § 4.

and both parties have advanced cogent arguments in favor of their respective positions. In order to resolve the issue, we first consider the underpinnings of the rule on which husband relies. The rule was first announced in *Feves and Feves*, 198 Or 151, 254 P2d 694 (1953), a case decided before the current statutory support modification framework was enacted.

In *Feves*, the wife sought an increase in alimony, "not actually based upon any showing of real need on her part, but rather * * * based upon the proposition that in recent years [husband] has enjoyed a substantial increase in his annual income." *Id.* at 162. The husband was a physician who "had not yet become well established in his chosen profession at the time of divorce. He owned no property other than some personal property, including the equipment of his medical offices." *Id.* Through the joint efforts of the husband and his current wife, his practice had expanded until his annual income substantially exceeded its level during the parties' marriage. *Id.* The Supreme Court rejected the wife's argument that she was entitled to an increase in support in order to take into account the standard of living that she " 'would have enjoyed but for the divorce.' " *Id.* at 163 (quoting *Strickland v. Strickland*, 183 Or 297, 304, 192 P2d 986 (1948)). The court explained its decision as follows:

> "In a motion for modification of a decree to increase or decrease the amount of alimony payments the financial status of the former husband is an important factor to consider in connection with his ability to pay. But his improved financial status, if any, does not of itself ordinarily warrant an increase, and the amount of such increase, if it be determined that an increase is necessary and proper, is usually governed by considerations different from those which apply to an original allowance at time of decree. It is largely governed by the necessities of the former wife and the ability of the former husband to pay.
>
> "* * * * *
>
> "It is manifest that this statutory obligation for support and maintenance should not be so interpreted as to continue the rights of the former wife just as though no divorce had been granted. The statute does not contemplate a continuing right in her to share in future accumulations of

wealth by her divorced husband, to which she contributes nothing."

*Id.* at 163-64. It is clear that the court did not intend for the rule it announced to be inelastic; instead, the obligor's improved financial status does not of itself *ordinarily* warrant a spousal support increase. Moreover, the rule is premised on the view that an obligee spouse is not entitled to share in the benefit of post-dissolution financial attainments to which only the obligor contributed. As will be seen, those qualifiers have not always been recalled in later judicial restatements of the rule.

In fact, the holding in *Feves* has, in later decisions, been characterized in several different ways. An early example is found in *McReynolds v. McReynolds*, 24 Or App 891, 895, 547 P2d 664 (1976), where this court affirmed the trial court's denial of the wife's motion to increase spousal support:

> "[W]ife argues that the substantial increase in the husband's income since the divorce is ground for modification. While husband's ability to pay is an important factor in determining whether a modification is called for, it alone is not a sufficient ground where, as here, other factors indicate that no modification is warranted."

That phrasing of the rule suggests, by implication, that an increase in the obligor's ability to pay support *could, by itself,* justify a support increase *unless* other factors compel a contrary result.

In *Hill and Hill*, 31 Or App 41, 45, 569 P2d 686 (1977), this court restated the rule in yet different terms:

> "[T]he well-established rule is that an increase in income alone does not constitute a change in circumstances warranting an award of greater spousal support[,] a rule reflecting the view that spousal support is designed to aid an ex-spouse in maintaining a standard of living roughly commensurate with that existing *at the time of the dissolution.*"

(Emphasis in original.) *Hill* thus described the rule as one founded on the principle that the benchmark for spousal support is the lifestyle previously enjoyed by the parties. That

principle, which gained ascendancy in the mid-1970s, was ratified by the Supreme Court in *Grove and Grove*, 280 Or 341, 571 P2d 477, *modified on recons*, 280 Or 769, 572 P2d 1320 (1977), where the court cited with approval this court's holding in *Kitson and Kitson*, 17 Or App 648, 523 P2d 575, *rev den* (1974). In *Kitson*, we held that "if the wife is not employable or only employable at a low income compared to her standard of living during marriage then, generally speaking, permanent support is appropriate." *Id.* at 656.

In *Ward and Ward*, 41 Or App 447, 452, 599 P2d 1150 (1979), this court, after referring to the *Grove/Kitson* rule, described the holding in *Feves* by stating that "the appropriate level of alimony support is based on the standard of living enjoyed during the marriage, not upon the subsequent improvement in the fortunes of the obligated spouse." Yet, in *Barron and Barron*, 85 Or App 278, 281, 736 P2d 583 (1987), we cited *Hill* and *McReynolds* for a more distilled proposition, stating that "[the husband] argues that an increase in his income, by itself, does not justify a modification. We agree." We restated the rule in virtually the same terms in *Maier and Maier*, 137 Or App 15, 19, 902 P2d 1214 (1995), *rev den*, 322 Or 644 (1996), and *Grady and Grady*, 128 Or App 114, 117, 875 P2d 1174 (1994), where we stated that "husband's post-dissolution increase in income, without more, does not constitute a change in circumstances warranting an increase in spousal support."

Despite being plagued by varying, if not inconsistent, judicial characterizations over the years since *Feves* was decided, the rule on which husband relies is based on three foundational premises. First, the rule is one of general, but not invariable, application. Second, an obligee is not entitled to share in the increased earning capacity acquired by the obligor following dissolution to which the obligee did not contribute. Third, spousal support awards—including modified awards—in long-term marriages are based on the standard of living enjoyed by the parties *during* the marriage.[3]

---

[3] In *Hill*, this court referred to the standard of living *at the time of dissolution*. *Hill*, 31 Or App at 45. However, that statement is unduly restrictive. It fails to accommodate the line of cases in which support awards were not based on the parties' incomes at the time of dissolution because those circumstances were skewed and did not accurately reflect the earning capacity of the obligor spouse. *See, e.g.,*

Husband relies primarily on the few cases that restate the rule in distilled terms, *e.g.*, *Grady* and *Maier*, without mentioning the premises underlying it. If the issue were to be viewed in such terms, husband's position would be the more persuasive. After all, wife's request for an increase in spousal support in this case *is* based on husband's improved circumstances since the dissolution. However, that view is too narrow. In each case in which the courts have declined to increase spousal support in light of a post-dissolution improvement in the obligor's income, an increase would have permitted the obligee to benefit from a change in circumstances that apparently did not result from the obligee's predissolution contribution to the obligor's earning capacity. *See, e.g.*, *Feves*, 198 Or at 164; *Grady*, 128 Or App at 116-17; *Hill*, 31 Or App at 44-45; *Hillyer and Hillyer*, 28 Or App 867, 869-70, 562 P2d 205 (1977); *McReynolds*, 24 Or App at 894-95.

The circumstances here are quite different. These parties were married for nearly 24 years. Wife made substantial contributions to husband's earning capacity, and there is no evidence that the post-dissolution return of husband's income to its predissolution level was the result of any post-dissolution enhancement of his personal qualifications or accomplishments; rather, the evidence showed that it resulted from an unforeseen change in the underlying economic environment of the medical profession. Furthermore, husband's income has not improved beyond the level enjoyed by the parties throughout most of the later years of the marriage; it merely has returned to that level. It is that level, rather than the downturn at the end, that primarily characterized the standard of living enjoyed by the parties during the marriage. *See Christensen and Christensen*, 123 Or App 412, 415, 859 P2d 1192 (1993). Accordingly, an increase in spousal support would enable wife, without giving her a windfall, to enjoy a standard of living not overly disproportionate to the standard enjoyed during the marriage. Nor, under the unusual circumstances presented here, do we discern any offense to the principle that an obligee who did not contribute to the increased earning capacity acquired by an

---

*Fisher and Fisher*, 148 Or App 208, 214, 939 P2d 149 (1997); *DeNotta and DeNotta*, 147 Or App 149, 935 P2d 475 (1997).

obligor following dissolution is not entitled to share in that increase.

 That conclusion, though, does not fully answer husband's objections to the trial court's decision. As noted, husband contends that, if wife believed that support should initially have been fixed based on the standard of living enjoyed during the marriage, she should have litigated that issue at the time of dissolution. In his view, wife impermissibly is attempting to litigate an issue that she could have raised earlier. Husband is mistaken.

 It is true that, if the amount of the spousal support award had been contested at a dissolution trial, the court would not have been limited to consideration of the income husband was earning at the moment. The court also could have taken into account "the record of the parties' earnings, their work histories and other factors in determining their earning capacities" for the purpose of making an award. *Christensen*, 123 Or App at 415. However, irrespective of pre-existing circumstances, spousal support could not initially have been set at a higher level than husband was able to pay at the time of dissolution. *See Waterman and Waterman*, 158 Or App 267, 271, 974 P2d 256 (1999) (holding that the obligee must demonstrate that the obligor is able to pay support based on imputed income that exceeds the obligor's current income). That is true because, although spousal support may be fixed based on forecast income, the forecast must be predicated on facts existing at the time the award is made. *Sigler and Sigler*, 133 Or App 68, 71, 889 P2d 1323 (1995). In this case, the parties agree that, at the time of dissolution, it was unreasonable to forecast a restoration of husband's predissolution income level. Because that restoration was unforeseen, the trial court could not have made a spousal support award based on it.

Husband further asserts that endorsement of wife's position would open the floodgates to vexatious support modification litigation, because it would mean that any post-dissolution improvement in an obligor's income could trigger a support increase. Again, we disagree. Wife advocates no departure from the rule that an obligor's improved income "does not of itself *ordinarily* warrant an increase" in spousal

support. *Feves*, 198 Or at 163 (emphasis added). This is not an ordinary case. Here, the evidence established that husband had resumed an income level commensurate with the parties' predissolution standard of living and that the resumption was not attributable to any post-dissolution enhancement of husband's own personal qualifications or accomplishments. Thus, wife was not seeking increased support based on post-dissolution income increases (1) that exceeded the marital standard of living; or (2) that wife had not, by reason of her marital contributions to husband's earning capacity, helped produce.

■ Moreover, spousal support determinations are inherently fact specific, and they often are not susceptible to resolution by the application of fixed, mechanical rules. In fact, if the rule upon which husband relies were as inflexible as he urges, it arguably would be inconsistent with the applicable statutory support framework. ORS 107.135(3)(a) (1999) expressly contemplates that, in determining whether a change of circumstances has occurred, courts will consider, among other factors, obligors' income opportunities, including the reasonable opportunity to acquire future income. It does not provide that, in the absence of other relevant changes, an increase in an obligor's income *never* can suffice to justify a support increase. *See Coughlin and Coughlin*, 159 Or App 447, 454, 979 P2d 292 (1999) (holding that, under ORS 107.135 (1995), "the trial court has the power to modify an award of spousal support based on a substantial change in *a party's* economic circumstances" (emphasis added)).

In any event, as noted, the general rule stated in *Feves* is not so inflexible. It does not control where, as here, wife has established that (1) the post-dissolution increase in husband's income was not the product of any post-dissolution enhancement of his personal qualifications or accomplishments and (2) it merely restored husband's income to a level that is consistent with the standard of living that the parties enjoyed during the marriage. The trial court correctly concluded that wife established a change in circumstances sufficient to warrant an increase in spousal support.

The dissent raises a number of objections to our conclusion. Most are influenced by a misplaced emphasis that is

introduced in its opening paragraph, which states, "It bears emphasis that the sole basis for wife's motion to modify is the fact that husband's actual income turned out to be more than *she* thought it would be." 184 Or App at 206 (Landau, J., dissenting) (emphasis added). That, indeed, is a curious way to look at this case. The dissent seems to view wife's dilemma as self-imposed; in other words, she simply guessed wrong about husband's future income and should be stuck with the consequences. So, for example, the dissent emphasizes that a goal of dissolution law is to bring final resolution to the common financial affairs of former spouses. The problem is that those points do not govern the proper disposition of this case.

This is a statutorily authorized proceeding to modify a spousal support award. Nobody disputes that it generally is for the best to minimize future litigation between former spouses. That is why property division and most other provisions of a judgment are final when made. But, the legislature has recognized that it simply is not appropriate to bar further litigation of spousal and child support obligations when the parties' circumstances change unforeseeably. The goal of finality thus is inherently qualified by the recognition that, as to those issues, the parties' rights and obligations may not be finally fixed in the original judgment.

Moreover, here, at the time of dissolution both parties—not just wife—failed to anticipate the subsequent increase in husband's income to predissolution levels. The parties' mutuality of belief in that regard satisfies the modification requirement that the relevant change in circumstances was not foreseen when the previous support order was entered. Indeed, for husband to contest that point could suggest that wife's acceptance of a support award based on his income level at the time of dissolution was the product of her unilateral mistake and his own inequitable conduct. Such circumstances would have rendered the dissolution judgment vulnerable to a motion under ORCP 71, but that is not the situation here.

The dissent makes three other points that deserve brief responses. The first is that our decision is based on an exception to the general rule that an increase in the obligor's income alone does not justify an increase in spousal support.

The dissent is right about that. However, the fact that some of this court's decisions have overlooked the limiting word "ordinarily" that circumscribes the rule announced in *Feves* does not make the rule invariable. This court simply has had no occasion to consider the issue before us until now. No doors were closed by our earlier decisions, because none of them involved circumstances like those present here.

Second, the dissent argues that our decision creates an ill-defined standard that will lead "to additional litigation just to figure out what it means, to say nothing of whether it applies to future cases." 184 Or App at 208 (Landau, J., dissenting). Although the dissent's premise, if true, would merit the alarm it sounds, it is mistaken. This case presents no opportunity to consider the broad universe of circumstances that could increase an individual's earning capacity. Most of the possibilities that the dissent mentions, including "education, training, * * * increasing efficiency, or developing new marketing strategies," *id.* at 209 (Landau, J., dissenting), are plausible in the abstract, but irrelevant here. There is no evidence that any of those factors contributed to the post-dissolution increase in husband's income in this case.[4] The only issue before us is whether an increase in an obligor's income that merely reflects a resumption of the marital standard of living—and is not the product of the obligor's enhanced qualifications or accomplishments—is sufficient, by itself, to satisfy the change in circumstances rule.[5] That issue is both narrow and precise. The dissent's preoccupation with other issues makes clear what we are not deciding, but it sheds no light on the proper resolution of this case.

Finally, the dissent takes us to task for finding that wife "has made the proper showing" to satisfy her burden of

---

[4] The dissent also mentions "adjusting work hours." 184 Or App at 209 (Landau, J., dissenting). As noted elsewhere, workload increases probably did account for the resumption of husband's former income level in this case. However, husband's return to a workload level that existed during the marriage and produced the marital standard of living, supports, rather than undermines, our conclusion that the increase in his income was not the product of any enhanced qualifications or accomplishments that husband attained after the dissolution.

[5] Thus, the dissent is mistaken when it suggests that "[t]he majority appears to adopt—although not explicitly—the view that wife satisfies her burden if she proves that the post-dissolution increase was not *exclusively* the product of husband's own efforts." 184 Or App at 209 (Landau, J., dissenting) (emphasis added).

proving a substantial change in circumstances. *Id.* at 210 (Landau, J., dissenting). We understand the dissent to mean that, even if our legal premise were correct, wife's evidence would not be sufficient to make out a *prima facie* case that satisfies it. That question should not be confused with the issue of whether wife's evidence *preponderated*. Although husband argued—for the first time in his reply brief—that "just because [he] did not obtain further formal education does not mean that the increase in his earnings was not due to his own efforts in working harder and changing the manner in which he does business;" husband presented no evidence that the increase resulted from his own enhanced qualifications or accomplishments. In the absence of countervailing evidence, therefore, the only serious issue is whether wife made out a *prima facie* case for a substantial change in circumstances. That question, in turn, depends solely on whether the evidence reasonably permits the inference that husband's post-dissolution income increase was not the result of his own enhanced qualifications or accomplishments. *See Smith v. J. C. Penney Co.*, 269 Or 643, 650, 525 P2d 1299 (1974) (a disputed fact may be proved by reasonable inference, although not by speculation). The evidence does.

■ Wife proved that, within three years of the dissolution judgment, husband's income had returned to levels that prevailed over the years leading up to dissolution. The evidence also showed that the dramatic decline in husband's income that occurred in the year of dissolution was based on external circumstances that had begun to affect the medical profession in general. Specifically, husband had always carried a heavy workload until just before the dissolution, but "health care reform" caused significant cutbacks in his workload in the year preceding dissolution. Furthermore, the evidence showed that husband had not obtained any post-dissolution education or training that might explain the resumption of his former income level. From that evidence, it is reasonable to infer that the post-dissolution increase in husband's income was due to the increased availability of work resulting from an abatement of adverse external circumstances rather than an enhancement in his personal qualifications or accomplishments. That inference is reasonable, as opposed to speculative, because it comports with

ordinary experience with respect to the correlation between changes in workload and reductions or increases in income. *See Fugate v. Safeway Stores, Inc.*, 135 Or App 168, 171, 897 P2d 328 (1995) (quoting *Law v. Kemp*, 276 Or 581, 585-86, 556 P2d 109 (1976) (although a trier of fact may not base its decision solely on speculation or guesswork, "it must be able 'to apply the ordinary experience of mankind' to the facts and draw reasonable inferences").

In short, the evidence established that husband resumed an income level commensurate with the parties' predissolution standard of living and that the resumption was not attributable to any post-dissolution enhancement of husband's own personal qualifications or accomplishments. Under those circumstances, the trial court properly concluded that wife demonstrated a substantial change in circumstances warranting an increase in spousal support.

Affirmed.

**LANDAU, J.,** dissenting.

Wife stipulated to husband's earning capacity, and that stipulation was the basis for the spousal support provisions of the dissolution judgment. It turns out that her stipulation underestimated husband's potential earnings. Now, six years later, she asks the courts to remedy that and to refashion the spousal support award to reflect husband's higher level of earnings. It bears emphasis that the sole basis for wife's motion to modify is the fact that husband's actual income turned out to be more than she thought it would be.

That said, this should have been an easy case. There is a well-established rule consistently applied for nearly four decades that an increase in a spousal support obligor's income, by itself, is not a "substantial change in circumstances" sufficient to warrant a reexamination of the support award. That rule is based on a strong public policy of finality. *See Adams and Adams*, 149 Or App 342, 347, 942 P2d 874 (1997) (noting "strong public policy favoring finality" of dissolution judgments). As the Supreme Court explained in the seminal opinion of *Feves v. Feves*, 198 Or 151, 163-64, 254 P2d 694 (1953):

"In a motion for modification of a decree to increase or decrease the amount of alimony payments the financial status of the former husband is an important factor to consider in connection with his ability to pay. But his improved financial status, if any, does not of itself ordinarily warrant an increase * * *.

"Divorce terminates the marital status. Thereafter, the parties bear no relation to each other. They are as strangers. But for the statute, no obligation whatever would exist for further support and maintenance of the former wife.

"It is manifest that this statutory obligation for support and maintenance should not be so interpreted as to continue the rights of the former wife just as though no divorce had been granted. The statute does not contemplate a continuing right in her to share in future accumulations of wealth by her divorced husband, to which she contributes nothing."

Since then, the rule has lost its sexist phrasing, but the bottom line has remained the same. Thus, for example, in *Maier and Maier*, 137 Or App 15, 18-19, 902 P2d 1214 (1995), *rev den*, 322 Or 644 (1996), we explained:

"An increase in income of the payor spouse may be pertinent in deciding if the payor has the ability to pay increased support made necessary by a substantial and unanticipated change in the parties' economic circumstances. However, * * * a payor's post-dissolution increase in income, *in itself*, does not constitute a change of circumstances warranting an increase in spousal support."

(Emphasis in original.) *See also Grady and Grady*, 128 Or App 114, 117, 875 P2d 1174, *rev dismissed*, 319 Or 626 (1994) ("husband's post-dissolution increase in income, without more, does not constitute a change in circumstances warranting an increase in spousal support"); *Hill and Hill*, 31 Or App 41, 45, 569 P2d 686 (1977) ("the well established rule is that an increase in income alone does not constitute a change in circumstances warranting an award of greater spousal support"); 2 *Family Law* § 12.99, 12-62 (Oregon CLE 2002) ("An increase in the obligor's income does not alone justify an upward modification in spousal support.").

In this case, as I have noted, wife's only argument is that the increase in husband's income alone *is* sufficient to

establish a substantial change in circumstances. That simply is incorrect and should have been the end of the matter.

The majority acknowledges the longstanding rule, but creates a heretofore unacknowledged exception to it. According to the majority, the general rule simply does not apply if (1) the post-dissolution increase in the obligor's income does not exceed the predissolution "standard of living" and (2) the increase in income is not "the result of any post-dissolution enhancement of [the obligor's] personal qualifications or accomplishments." 184 Or App at 200.

In my view, the majority's new exception and its application are problematic for a number of reasons.

First, the new exception cannot be reconciled with prior case law. Nowhere in any of the prior cases is there stated a qualification that a post-dissolution increase in income is sufficient, by itself, to constitute a substantial change of circumstances when the increase does not exceed the record of earnings during the marriage. Everything in the relevant case law suggests precisely the contrary. The majority's only defense is that, in 1953, *Feves* employed the word "ordinarily" in describing the rule. The majority's new exception, however, is a lot to read into the word "ordinarily." More importantly, the majority ignores the fact that, in the decades since *Feves*, this court has consistently interpreted "ordinarily" to mean that, "without more," a payor spouse's increase in income is not sufficient to establish a substantial change in circumstances. *Maier*, 137 Or App at 18-19; *Grady*, 128 Or App at 117; *Hill*, 31 Or App at 45.

Second, the majority's new exception is, frankly, ill-defined and doubtless will lead to additional litigation just to figure out what it means, to say nothing of whether it applies in future cases. For example, the majority supplies no standard by which to determine whether the post-dissolution increase in earning capacity is the result of husband's own efforts. The majority does not define what the relevant considerations are. It seems to accept without criticism wife's assertion that the only relevant consideration is whether husband obtained additional education or training after the dissolution. In my view, that is an unrealistic view of enhanced earning capacity. An increase in an individual's earning capacity may be a product of any number of factors,

including education, training, adjusting work hours, increasing efficiency, or developing new marketing strategies.

Aside from that, the majority leaves unanswered the quantitative aspect of wife's burden. Precisely how much of the post-dissolution increase in earning capacity must be attributable to wife? What happens if the post-dissolution increase was the result of both husband's post-dissolution efforts and wife's predissolution contributions? Must she prove that the increase was predominantly attributable to her contributions to husband's earning capacity? Must she prove merely that the increase was not exclusively the product of husband's own post-dissolution efforts? Or is the standard somewhere in between those two possibilities?

The majority appears to adopt—although not explicitly—the view that wife satisfies her burden if she proves that the post-dissolution increase was not exclusively the product of husband's own efforts.[1] That, however, sets an impossible standard that cannot be reconciled with the case law. In every single case—save, perhaps, a case in which the obligor completely changes careers—a post-dissolution increase in earning capacity will be attributable to the obligee spouse's contributions at least to some degree. Assume, for example, that in this case, husband could demonstrate that the post-dissolution increase was overwhelmingly due to an increase in working hours, new marketing strategies, and the like. The very fact that he is still a physician is attributable in some measure to wife's predissolution contributions to the acquisition of his medical education. Thus, no matter how much the increase is due to husband's own efforts, wife *always* will be able to claim that the increase is due to her predissolution contributions to his earning capacity. In other words, as long as a post-dissolution increase in earnings does not exceed the predissolution standard of living—however that is defined—it will be the odd case in which an increase in earning capacity will *not* be a basis for modification of spousal support.

Third, even assuming for the sake of argument the validity of the majority's new exception, and assuming that

---

[1] The majority says that I am wrong about that. But then it says that the determinative issue is whether "husband's post-dissolution income increase was not the result of his own enhanced qualifications or accomplishments." 184 Or App at 205.

wife is required to show that the post-dissolution increase in earning capacity is due, in some substantial part, to her pre-dissolution contributions, I question whether wife has made the proper showing. According to the majority, wife has satisfied her burden of proof for two reasons: (1) the undisputed evidence shows that the predissolution decline in income was due to market forces, and (2) husband obtained no post-dissolution education or training. 184 Or App at 205. "In the absence of countervailing evidence," the majority concludes, that evidence constitutes a *prima facie* case that there was a substantial change in circumstances. 184 Or App at 205.

Look carefully at the majority's reasoning: because the evidence showed that the predissolution decline was due to market forces, it is reasonable to infer that, when there was a post-dissolution increase, it was due to market forces, as well. That is wholly illogical. Even if the predissolution decrease was due to market forces, it does not necessarily follow that the post-dissolution increase was due to market forces, as well. As I have noted, the post-dissolution increase easily could have been due to any number of factors.

Even if it could be inferred that market forces theoretically could have been one such factor, it is mere speculation to say, without more, that in this case that is what happened. The majority attempts to bolster its conclusion by asserting that its inference is reasonable "[i]n the absence of countervailing evidence." 184 Or App at 205. In so doing, however, the majority ignores the fact that it is wife's burden—not husband's—to prove the substantial change in circumstances. *McDonnal and McDonnal*, 293 Or 772, 783, 652 P2d 1247 (1982) ("the party seeking the modification bears the burden of showing a substantial change in circumstances since the original decree"). The majority effectively holds that wife can satisfy that burden by virtue of husband's failure to present evidence. Wife's burden, in other words, is no burden at all.

In short, this case is much more straightforward than the majority makes it. There is a well-established principle of law that applies. It precludes wife from obtaining the relief that she seeks. The majority's refusal to apply that rule

is ill-advised in this case and will likely lead to problems down the road. I therefore respectfully dissent.

Deits, C. J., and Edmonds, J., join in this dissent.