Argued and submitted September 4, 2003, decision of the Court of Appeals reversed; judgment of the circuit court reversed and case remanded to the circuit court for further proceedings May 27, 2004

## In the Matter of the Marriage of

### Larry WEBER,
*Petitioner on Review,*

### *and*

### Marilyn WEBER,
*Respondent on Review.*

## (CC C95-1232DR; CA A113178; SC S49905)

91 P3d 706

J. Michael Alexander, of Swanson, Lathen, Alexander & McCann, PC, Salem, argued the cause and filed the briefs for petitioner on review.

Gary Zimmer, of Zimmer & Bunch, LLC, Portland, argued the cause for respondent on review. With him on the briefs was Cecil Rennich-Smith.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

DE MUNIZ, J.

Durham, J., dissented and filed an opinion.

** Kistler, J., did not participate in the consideration or decision of this case.

**DE MUNIZ, J.**

The issue in this marriage dissolution case is whether, under ORS 107.135, a post-dissolution increase in a payor spouse's annual income is a substantial change in economic circumstance that permits the reconsideration of a payor spouse's support obligation. Husband, the payor in this case, is a physician. In the months preceding the parties' 1994 marriage dissolution, husband's income had declined significantly due to changes in the medical profession. The parties resolved their divorce by stipulated dissolution judgment. That judgment presumed that husband's reduced income level would continue indefinitely and calculated wife's spousal support based on that amount. Within three years of the parties' marriage dissolution, however, husband's income had returned to the level that husband and wife had enjoyed before husband's income began to decline. In 1999, wife moved to modify the award of spousal support based on husband's increased income, and the trial court granted that motion.

Husband appealed, and the Court of Appeals affirmed. *Weber and Weber*, 184 Or App 190, 56 P3d 406 (2002). This court allowed husband's petition for review. We limit our review to questions of law, ORS 19.415(4) and, on review, we hold that the post-dissolution increase in husband's income is not a substantial change in economic circumstance under ORS 107.135 that permitted the reconsideration of husband's spousal support obligation. We therefore reverse the decision of the Court of Appeals and the judgment of the trial court.

We state the facts as they were presented in the Court of Appeals' opinion below:

> "The parties were married in 1971 while in their junior year of college. At the time of the dissolution in 1995, both parties were 45 years old, and their two sons were 14 and 10, respectively. Wife obtained a master's degree in special education during husband's first two years of medical school. Husband's medical training lasted a total of seven years, and wife provided family support through teaching employment during the remaining five of the seven years. When husband entered the workforce as a physician, the

parties agreed that wife would stay at home to start their family and raise the children. Wife was a stay-at-home parent for the remainder of the marriage—approximately 14 years.

"During the last six years of the marriage, husband's professional income, including a $30,000 annual pretax contribution to his retirement plan, averaged more than $260,000 per year. The parties enjoyed a lifestyle commensurate with that level of income, including many vacations, a substantial gift and entertainment budget, and late-model vehicles.

"In 1994, after filing a petition to dissolve the parties' marriage, husband told wife that his income for that year would be drastically reduced because of changes in his practice that had resulted in a substantial reduction in his workload. In a letter to wife, husband stated that his 1994 practice income likely would be less than $150,000 and that 'the bottom [was] not in sight.' Husband's attorney restated that position in two letters to wife's attorney, and husband provided letters from other physicians with whom he practiced affirming that there was little or no expectation that husband's income would return to its previous level.

"Based on the foregoing information, the parties agreed to a stipulated judgment of dissolution that presumed an income level of $150,000 for husband. That presumed income was not explicitly posited in the spousal support provision of the judgment, but the child support worksheet filed with the judgment expressly included it. The judgment presumed that wife's gross monthly income was $823. The parties agreed that husband would pay $3,560 per month in spousal support for four years beginning in June 1995 and that, thereafter, support would continue indefinitely in the amount of $2,500 per month. Husband agreed not to seek a reduction in spousal support for the first four years after the judgment was entered should wife remarry, cohabit with another person, or obtain employment. Husband was required to pay child support for each child until the last day of July following the child's graduation from high school. Thereafter, husband was to be solely responsible for the cost of four years of college for each child. The parties agreed that when the older child graduated from high school, child support would be recalculated without the parties having to show an unanticipated, substantial change of circumstances.

"In September 1999, after the parties' older son graduated from high school, husband filed a motion to modify his child support obligation. In response to that motion, and particularly with reference to the income information provided by husband, wife filed a motion to modify the judgment to increase husband's spousal support obligation. Information disclosed in the modification proceeding showed that husband's income and standard of living had, by 1997, returned to their pre-1994 levels. From 1997 through 1999, husband's pretax income averaged $249,000 and, at trial in this proceeding, husband testified that he expected his year-2000 income to range between $240,000 and $270,000. Husband testified that he had taken several foreign vacations since the dissolution and had purchased a new vehicle. Husband also testified that he had not done any additional training or taken any courses to improve his skills or earning capacity since the dissolution judgment was entered in 1995.

"At the time of the modification hearing in 2000, wife was a half-time public school teacher earning $1,566 per month. Wife also was attempting to establish herself as an artist but had income averaging only $60 per month from that work. In addition, wife had passive income of $220 per month and spousal support of $2,500 per month, yielding total monthly income of about $4,300. Wife testified that her lifestyle had deteriorated since the dissolution; she had taken fewer vacations than before, she had traded her late-model vehicle in for an older car, and she now bought her clothes at resale shops.

"There was no evidence in the modification proceeding that, in negotiating the stipulated judgment of dissolution in 1995, husband had misrepresented his then-current income or that his expectation and assertion that it would not increase in the future were unreasonable."

184 Or App at 192-94.

The trial court granted wife's motion for increased support. In a written decision, the trial court reasoned that it was proper to increase support because an increase would permit wife to enjoy a standard of living not overly disproportionate to the parties' marital standard. In that regard, the trial court wrote:

> " 'This is not a subsistence case; it is a standard of living case. Wife is not starving. Husband's monthly expenses reveal a comfortable standard of living, roughly comparable with that of the marriage. Wife lives substantially below the marital standard of living. Now that [h]usband has resumed that lifestyle, [w]ife is entitled to spousal support based on that lifestyle.' "[1]

*Id.* at 194.

A majority of the judges of the Court of Appeals affirmed the trial court's judgment.[2] In its opinion, the majority acknowledged that, in *Feves v. Feves*, 198 Or 151, 254 P2d 694 (1953), this court had held that a post-dissolution increase in a payor spouse's income ordinarily does not constitute changed circumstances warranting an attendant increase in spousal support. However, the Court of Appeals majority determined:

> "This is not an ordinary case. Here, the evidence established that husband had resumed an income level commensurate with the parties' predissolution standard of living and that the resumption was not attributable to any post-dissolution enhancement of husband's own personal qualifications or accomplishments. Thus, wife was not seeking increased support based on post-dissolution income increases (1) that exceeded the marital standard of living; or (2) that wife had not, by reason of her marital contributions to husband's earning capacity, helped produce."

*Weber,* 184 Or App at 202. From that determination, the majority held that *Feves*

> "does not control where, as here, wife has established that (1) the post-dissolution increase in husband's income was not the product of any post-dissolution enhancement of his personal qualifications or accomplishments and (2) it merely restored husband's income to a level that is consistent with the standard of living that the parties enjoyed during the marriage."

---

[1] Although not reported in the Court of Appeals' factual recitation, wife testified at the hearing that she owned and lived in a home worth $400,000, having an equity of $350,000, had a retirement account worth about $500,000, and had various investment accounts worth another $34,000.

[2] Three judges dissented. *Weber and Weber,* 184 Or App 190, 56 P3d 406 (2002) (Landau, J., joined by Diets, C. J., and Edmonds, J., dissenting).

*Id.* Ultimately, the majority concluded that the trial court did not err in increasing wife's spousal support based on husband's increased post-dissolution income.

Instead of focusing on the modification statute, ORS 107.135, the parties have focused, as did the majority and the dissent in the Court of Appeals, exclusively on the application of this court's decision in *Feves*.[3] Although we ultimately conclude that the *Feves* decision contributes to our understanding of ORS 107.135 and, therefore, is important to the resolution of this case, we consider it important to highlight the position that *Feves* and other decisions of this court occupy within the hierarchical order of family law. To the extent that the legislature has enacted pertinent statutes, those statutes are the primary source of law and policy regarding family law issues in Oregon. This court is responsible for applying those legislative directives.

■ In this case, ORS 107.135(3)(a) and (4)(b) are pertinent to the resolution of wife's motion to modify the spousal support award. ORS 107.135(3) provides, in part:

"In a proceeding under this section to reconsider the spousal or child support provisions of the judgment, the following provisions apply:

"(a) A substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support * * *."

ORS 107.135(4) also states, in part:

"In considering under this section whether a change in circumstances exists sufficient for the court to reconsider spousal or child support provisions of a judgment, the following provisions apply:

---

[3] The dissolution judgment at issue here was entered in 1994, the motion to modify it was submitted in 1999, and a hearing on that matter was held in 2000. In 2003, provisions were added to ORS 107.135—not relevant to this case—that resulted in a renumbering of the subsections within that statute. Here, neither party has presented an argument based on the text of any earlier version of ORS 107.135. The relevant subsections of the statute have remained unchanged save for a shift in numbering. As a result, we will refer to the 2003 version of the modification statute throughout this opinion because its relevant provisions remain applicable in this case.

"(a) The court or administrator, as defined in ORS 25.010, shall consider income opportunities and benefits of the respective parties from all sources, including but not limited to:

"(A) The reasonable opportunity of each party, the obligor and obligee respectively, to acquire future income and assets.

"(B) Retirement benefits available to the obligor and to the obligee.

"(C) Other benefits to which the obligor is entitled, such as travel benefits, recreational benefits and medical benefits, contrasted with benefits to which the obligee is similarly entitled."

As noted, neither party argues that a particular word or phrase used in the text of either ORS 107.135(3)(a) or (4)(a) compels a particular result in this case. For example, wife does not assert that there has been "a substantial change in the cost of reasonable and necessary expenses to either party," ORS 107.135(3)(a), or that either party's reasonable opportunity "to acquire future income and assets" has changed substantially, ORS 107.135(4)(a)(A). Rather, as we understand it, the basis of wife's claim is the court's power to modify a spousal support award under ORS 107.135(3)(a). We, therefore, must determine whether there has been a "substantial change in economic circumstances of either party" that is "sufficient for the court to reconsider" a previous order of support.

The statutory authority permitting courts to modify a previous spousal support award has existed in this state for well over 100 years. *See Corder v. Speake*, 37 Or 105, 108, 51 P 647 (1898) (acknowledging that Hill's Annotated Laws § 502 "authorizes the court, upon motion, to set aside, alter, or modify so much of the decree of divorce as relates to the [support] of either party"). Although the legislature had empowered the courts to modify spousal support, nothing in the text of the early statutes explained what circumstances justified a reconsideration of spousal support or what weight a court should accord those circumstances in deciding whether to modify support. Because the legislature had not enumerated those circumstances in the statutes, the courts

were left to determine the relevance and weight of the circumstances offered by the parties to justify a reconsideration of a previous spousal support award.

This court did so. For example, in *Brandt v. Brandt*, 40 Or 477, 67 P 508 (1902), this court articulated a formulation of the existing spousal support modification rule:

> "Our statute, however, as construed by the decisions above cited, is broad enough to permit of the setting aside, alteration, or modification of the provision made for the maintenance of either spouse. To set aside is 'to annul, to make void': Bouvier, Law Dict. Anything less than an annulment would be an alteration or modification. So it would seem that the court is clothed with power adequate to set aside, as well as to alter or modify, a provision for permanent alimony or allowance as the exigencies of the case may require.
>
> "*Notwithstanding, the allowance should be treated as res adjudicata as to the then existing circumstances and conditions, and not subject to annulment or modification, except upon new conditions subsequently arising*, or, perhaps, upon facts occurring before the decree, of which the party was excusably ignorant at the time of its rendition[.]"

*Id.* at 485 (emphasis added). It was only through the adjudication of individual cases over a number of years that this court formulated, refined, and gave content to the "new conditions subsequently arising" rule stated in *Brandt*. *Feves* was one of those cases.

When this court decided *Feves* in 1953, neither the modification statute[4] nor case law provided a definitive answer to the question whether a post-dissolution increase in a payor spouse's income could, without more, permit the court to order an upward modification of support payments. The husband in *Feves* was a physician who "had not yet become well established in his chosen profession at the time

---

[4] At the time, OCLA § 9-915 provided, in part:

"At any time after a [divorce] decree is given, the court or judge thereof, upon the motion of either party, shall have the power to set aside, alter or modify so much of the decree as may provide for the appointment of trustees for the care and custody of minor children, or the nurture and/or education thereof, or the maintenance of either party to the suit * * *."

of divorce." 198 Or at 162. When he and his wife dissolved their marriage, the husband agreed, as part of the divorce settlement, to pay monthly support to the wife as long as she remained unmarried; the trial court subsequently incorporated that agreement into the resulting divorce decree. *Id.* at 153. Eight years later, the parties entered into a second agreement. In it, the husband agreed, among other things, to make a single lump sum payment to the wife, and the wife agreed to forego any further support installments.[5] *Id.* at 154-55.

In the years between the parties' first agreement and their second, however, the husband had remarried. He and his second wife, through their joint efforts, began to expand the husband's medical practice. Eventually, the husband's annual income substantially exceeded the income level that he and his former wife had enjoyed during their marriage. As a result, over 10 years after the parties had divorced, the husband's former wife sought a reinstatement and increase in alimony "not actually based upon any showing of real need on her part, but rather * * * based upon the proposition that in recent years [the husband] has enjoyed a substantial increase in his annual income." *Id.* at 162. The trial court agreed with wife that husband's increase in his annual income was a "changed condition[ ]" justifying a modification of husband's spousal support obligation. On appeal, this court rejected that proposition. In doing so, this court also recognized three important principles governing the modification of spousal support agreements.

First, as a general matter, this court observed that agreements regarding spousal support—agreements made without fraud or misrepresentation, entered into freely, and approved by the courts—should be enforced, absent contravening public policy concerns. In that regard, this court stated:

"It is axiomatic that public policy requires that persons of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts,

---

[5] The husband also agreed to pay a substantial increase in monthly child support and to take out an irrevocable life insurance policy on himself, with the parties' child as beneficiary.

when entered into freely and voluntarily, shall be held sacred and shall be enforced by courts of justice; and it is only when some other overpowering rule of public policy intervenes, rendering such agreement unfair or illegal, that they will not be enforced."

*Id.* at 159.[6]

A second principle that *Feves* recognized was that the criteria for modifying support awards are different than those used to determine them initially. In that regard, this court acknowledged the validity of the long-standing rule that,

" '[i]n determining the allowances to a divorced [payee spouse] for [ ] support and maintenance and for the care, custody and education of the minor children, it is proper to take into consideration the social standing, comforts, and luxuries of life which [the payee spouse] and [the] children probably would have enjoyed but for the divorce.' "

*Id.* at 163 (quoting *Strickland v. Strickland*, 183 Or 297, 304, 192 P2d 986 (1948) (emphasis omitted)). The court, however, concluded that different considerations controlled the subsequent modification of those awards:

"In a motion for modification of a decree to increase or decrease the amount of alimony payments the financial status of the [payor spouse] is an important factor to consider in connection with his ability to pay. *But his improved financial status, if any, does not of itself ordinarily warrant an increase, and the amount of such increase, if it be determined that an increase is necessary and proper, is usually governed by considerations different from those which apply to an original allowance at time of decree. It is largely governed by the necessities of the former [payor spouse] and the ability of the former [payor spouse] to pay.*"

*Id.* (emphasis added). Therefore, although the parties' predissolution standard of living is relevant to establish an initial spousal support award, a subsequent upward modification of that award is based more properly on considerations

---

[6] Thirty years later, in *McDonnal and McDonnal*, 293 Or 772, 779, 652 P2d 1247 (1982), this court again cited that holding, adding:

"Once approved by the court and incorporated into the decree, agreements entered into by the parties are to be enforced as a matter of public policy."

of the payee spouse's increased needs and the payor spouse's concomitant ability to meet them.

Finally, the third principle derived from *Feves* is that, when a marriage is dissolved, courts should not interpret statutory support obligations in a manner that continues the rights of the parties as if no dissolution judgment had been granted:

> "Divorce terminates the marital status. Thereafter, the parties bear no relation to each other. They are as strangers. But for the statute, no obligation whatever would exist for further support and maintenance of the former [spouse].

> "It is manifest that this statutory obligation for support and maintenance should not be so interpreted as to continue the rights of the former [payee spouse] just as though no divorce had been granted. The statute does not contemplate a continuing right in [the payee spouse] to share in future accumulations of wealth by [the] divorced [payor spouse], to which [the payee spouse] contributes nothing."

*Id.* at 164.

In summary, based on the three principles discussed above, *Feves* held that a post-dissolution increase in a payor spouse's income "does not of itself ordinarily" constitute a "changed condition" justifying a reconsideration of the payor spouse's support obligation. Eventually, that "changed condition" rule evolved to require that a party seeking spousal support reconsideration prove that a substantial change in circumstances had taken place since the original dissolution judgment. *See, e.g., Grove and Grove*, 280 Or 341, 354, 571 P2d 277 (1977) (stating principle).

In 1982, this court acknowledged in *McDonnal and McDonnal*, 293 Or 772, 652 P2d 1247 (1982), that the legislature's modification statute still did not require a showing of changed circumstances.[7] That requirement, the *McDonnal* court noted, remained a court-created rule:

---

[7] At the time that *McDonnal* was decided, ORS 107.135(1) (1981) provided, in part:

> "The court has the power at any time after a decree of annulment or dissolution of marriage or of separation is granted, upon the motion of either party and after service of notice on the other party in the manner provided by law for service of a summons, to:

> "(a) Set aside, alter or modify so much of the decree as may provide for * * * the support of a party * * *."

"This statute, while granting the court the power to set aside, alter or modify the support provisions of a decree at any time after dissolution, does not specifically require a showing of changed circumstances. *It is a rule of case law, not statutory law, that the party seeking the modification bears the burden of showing a substantial change in circumstances since the original decree. Prime v. Prime,* [172 Or 34, 139 P2d 550 (1943)]; *Grove and Grove,* [280 Or 341, 571 P2d 477 (1977)]. The rule has become so well established that this court said almost thirty years ago that it had 'become hornbook law in this state.' *Feves v. Feves,* 198 Or at 159. The purpose of this rule has been said to be the avoidance of relitigation of matters settled by the final decree. H. Clark, *Law of Domestic Relations* 456 (1968)."

*Id.* at 783 (emphasis added).

By 1987, however, the legislature had enacted the "substantial change in economic circumstances" phrase into ORS 107.135 (1987):

"(2)   In a proceeding under this section to reconsider the spousal or child support provisions of the decree, the following provisions apply:

"(a)   *A substantial change in economic circumstances of a party,* which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support."

(Emphasis added.) As noted, that phrase—"[a] substantial change in economic circumstances of a party"—continues in the present version of ORS 107.135(3)(a).

The post-dissolution increase in a payor spouse's income could be interpreted as a substantial change in economic circumstance if the text of the statute were our sole consideration. However, neither of the experienced counsel in this case has argued at any stage of the proceedings that the rule enunciated in *Feves* does not provide context and substantive meaning for the current statutory phrase. Nor should they have done so. As part of this court's well-established statutory construction methodology, this court presumes that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing upon those statutes. *See State v. Waterhouse,* 209 Or 424, 436, 307 P2d

327 (1957) (stating presumption that statute is enacted "in the light of such existing judicial decisions as have a direct bearing upon it"); *see also Owens v. Maass*, 323 Or 430, 438, 918 P2d 808 (1996) (citing *Waterhouse* presumption as part of contextual analysis when this court's earlier decisions have direct bearing on interpretation of later-enacted or amended statutes).

■       That is the case here. The *Feves* rule had been in existence for over 35 years when the legislature included the phrase "substantial change in economic circumstances" within the spousal modification statute. *See Willis and Willis*, 314 Or 566, 569 n 1, 840 P2d 697 (1992) (phrase "substantial change in economic circumstances" added to modification statute in 1987). In light of the above-referenced rule of statutory construction, and in the absence of any argument to the contrary, we are confident that the legislature intended to include the *Feves* rule within the substantive meaning of the statutory phrase, "substantial change in economic circumstances." Therefore, we conclude that, under ORS 107.135(3)(a), a post-dissolution increase in a payor spouse's income "does not of itself ordinarily" constitute a "substantial change in economic circumstances" requiring a court to reconsider a previous spousal support award.[8] We now turn to a consideration of the rule's application in this case.

As noted, there has been a post-dissolution change in husband's income as that term commonly is understood. As *Feves* makes clear, however, a post-dissolution increase in a payor spouse's income, unaccompanied by any showing of, for example, a change in the payee spouse's needs, is ordinarily not a substantial change in economic circumstances within the substantive meaning of that statutory phrase.[9] Although

---

[8] We note that the statutory phrase "substantial change in economic circumstances" also applies to the modification of child support. However, the criteria for modification of child support are substantially different from that of spousal support, because the family relationships are different. The legislature has enacted other specific statutes with regard to child support and the modification of child support. *See* ORS 25.270 to 25.290 (setting special formula for child support, entitling child to benefit from the income of both parents to the same extent that child would have benefitted had family unit remained intact; and authorizing child support modification proceedings on two-year cycle).

[9] The dissent argues that we have misread *Feves* and, in doing so, have created a new and "demanding threshold standard for the reconsideration process," one

wife argues to the contrary, there is nothing factually in this case that is sufficient to preclude the application of the ordinary rule.

■ It is a reality of married life that a spouse's income may fluctuate over the course of a lengthy marriage. At the time that the marriage is being dissolved, the fact that one party's income has increased or decreased during the marriage and the context in which that fluctuation occurred, are factors that can and should be considered by the parties and the court in determining the financial aspects of the dissolution judgment. Through a variety of property and income arrangements, the parties can account for both the past and future earning potential of either spouse. *See Grove,* 280 Or at 344 (financial parts of dissolution judgment are worked out together, and none can be considered in isolation, *e.g.,* one spouse may be awarded specific assets as part of property to provide that spouse with income).

■ The spousal support provisions at issue here were the product of a court-approved stipulated dissolution judgment voluntarily entered into by the parties. The parties' own resolution of the spousal support issue is entitled to great weight.[10] *See McDonnal,* 293 Or at 779 ("In cases where a support agreement has been incorporated into the decree in lieu of an evidentiary hearing and factual determination by

---

that, in the dissent's view, "contravenes the plain terms of Oregon's current statute." 337 Or at 80 (Durham, J., dissenting). With respect, it is the dissent that has misread *Feves* and has failed to appreciate the importance of the principles established in *Feves* and now embodied in ORS 107.135. To a large degree, the utility of *Feves* is realized in the fact that it provides a measure of finality and predictability for spousal support judgments, while maintaining the flexibility necessary to meet the genuine needs of former spouses when the circumstances of their post-dissolution lives change significantly—a crucial point that seems to have escaped the dissent. In contrast, the dissent's interpretation of ORS 107.135(3)(a) sacrifices those tenets of finality and predictability in favor of an open-ended invitation to relitigate support judgments any time that market forces provide an economic windfall to one spouse or the other. That is not what the legislature intended.

[10] Although neither party refers to the statute, we note that ORS 107.104(1) provides:

"It is the policy of this state:

"(a) To encourage the settlement of suits for marital annulment, dissolution or separation; and

"(b) For courts to enforce the terms of settlements described in subsection (2) of this section to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy."

the court the agreement itself is the court's only measure of the equities between the parties. The parties' own resolution of their dispute should be accorded great weight."). All that wife has shown is that, at the time of their marriage dissolution, the parties concluded, based on the available information, that husband's current income reflected husband's future earning potential. That conclusion proved to be wrong. Without more, however, wife has failed to present a factual predicate permitting the court to reconsider the parties previously agreed upon level of spousal support.[11] The trial court's contrary conclusion and the Court of Appeals' affirmance of that conclusion were error.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**DURHAM, J.,** dissenting.

The majority adopts an interpretation of ORS 107.135(3)(a) that contradicts the ordinary meaning of the words of that statute. The majority claims that a paragraph in this court's decision over half a century ago in *Feves v. Feves*, 198 Or 151, 254 P2d 694 (1953), compels that interpretation of the statute. However, a careful reading of the paragraph in *Feves* on which the majority relies discloses that the majority has misread *Feves* and that that case affords no justification for the contradictory statutory construction that the majority has adopted. We must construe the text and context of ORS 107.135(3)(a), and apply the familiar meaning of the statute's words. When we examine the statute in that manner, it is apparent that the trial court and the Court of Appeals correctly decided that the evidence adduced here

---

[11] Without regard to the dispute over the legislature's intent, the dissent fails to address the simple proof problem that confronts wife in this case. There simply is no evidence in the record that supports the dissent's conclusion that an "upward adjustment in the spousal support award is well warranted." The parties did not litigate the terms of their marriage dissolution; rather, they created them together, and the court ratified the resulting agreement. No value ever was established with regard to wife's contribution to husband's enhanced earning capacity. In fact, by the terms of that agreement, husband kept his enhanced earning capacity for himself. There was nothing in that agreement indicating specifically what he gave to retain that, its reciprocal value to wife, or whether wife retained future rights therein. On that limited evidentiary record, there is simply no basis from which to calculate a modified award of spousal support that is not arbitrary.

satisfied the statutory standard for reconsideration of an award of spousal support. Because the trial court and Court of Appeals correctly decided this case, the majority's decision to reverse is a legal error. I respectfully dissent.

The principal issue in this case is whether the increase in husband's post-dissolution income, as shown in the record evidence, constitutes a "substantial change in economic circumstances of a party" under ORS 107.135(3)(a). If the answer to that question is "yes," then the statute authorized the trial court to reconsider its order of spousal support. Because the source of law that controls the answer to that question is a statute, this court must begin its analysis with the text and context of the statute and, in doing so, must give words of common usage "their plan, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

ORS 107.135 contains a complete statement of the legislature's policy regarding the court's authority to reconsider and modify a judgment of dissolution of marriage, including an award of spousal support, and the standard that controls the court's decision to do so. ORS 107.135 provides, in part:

"(1)  *The court may at any time after a judgment of* annulment or *dissolution of marriage* or of separation *is granted,* upon the motion of either party * * *:

"(a)  *Set aside, alter or modify any portion of the judgment that provides* * * * *for the support of a party* * * *.

"* * * * *

"(3)  In a proceeding under this section to reconsider the spousal or child support provisions of the judgment, the following provisions apply:

"(a)  *A substantial change in economic circumstances of a party,* which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, *is sufficient for the court to reconsider its order of support,* except that an order of compensatory spousal support may only be modified upon a showing of an involuntary, extraordinary and unanticipated change in circumstances that reduces the earning capacity of the paying spouse.

"* * * * *

"(4) In considering under this section whether a change in circumstances exists sufficient for the court to reconsider spousal or child support provisions of a judgment, the following provisions apply:

"(a) *The court* or administrator, as defined in ORS 25.010, *shall consider income opportunities and benefits of the respective parties from all sources*, including but not limited to:

"(A) The reasonable opportunity of each party, the obligor and obligee respectively, to acquire future income and assets."

(Emphasis added.)

In overview, several aspects of the foregoing statutory scheme are clear. First, subsection (1) grants authority to the trial court to modify the spousal support provision of an existing judgment of dissolution of marriage. Second, paragraph (3)(a) establishes the legal standard that controls whether the court may embark on a reconsideration of its order of support: "[a] substantial change in economic circumstances of a party * * *."[1]

Third, the legislature created no special statutory definition of that standard or any of its terms. The statutory standard is open-ended in the sense that *any* substantial change in the economic circumstances of a party will suffice. However, the legislature, in subsection (4), did set out a list of factual matters that the court must consider in determining whether a change of circumstances is "sufficient for the court

---

[1] Paragraph (3)(a) establishes a more demanding legal standard for modification of an award of compensatory spousal support, but this case does not involve that kind of spousal support award. In that different context, paragraph (3)(a) requires that the change of circumstances that reduces the earning capacity of the paying spouse be "involuntary, extraordinary and unanticipated * * *." It is worth noting that the legislature did not incorporate those criteria into the legal standard that controls here and chose, instead, to use only the legal criterion that the change of circumstances be "substantial." In its analysis of this case, the Court of Appeals twice commented on the fact that the post-dissolution change in husband's income resulted from an "unforeseen" change in the economic environment of the medical profession. *Weber and Weber*, 184 Or App 190, 200-01, 56 P3d 406 (2002). Although that factual determination certainly is correct, the foregoing discussion demonstrates that the statutory standard that applies here does not incorporate a proof requirement that the change of circumstances be "unanticipated."

to reconsider spousal or child support provisions of a judgment," including the parties' present and future income opportunities.

Fourth, the statute does not require the court, on reconsideration, to make any particular change in the existing support award. If a party proves that the economic circumstances of either party have changed substantially since the court entered the order of spousal support, then the statute merely *authorizes reconsideration* of the order of support. The statute does not entitle a party to a modification of spousal support payments. Rather, the court, on reconsideration of its award of support, must determine whether and to what extent it should modify the order of support, taking into account all the relevant circumstances that make any award of support just and equitable, ORS 107.105(1)(d), including the substantial change of economic circumstances of a party that has occurred and the fact that the parties no longer are married. In construing ORS 107.135, we must continue to bear in mind the distinction, evident from the statute's text, between the court's *authority to reconsider* a support award on a showing of a substantial change in the economic circumstances of a party and a party's claim of *entitlement on reconsideration to an increased level of support.*

Turning to the text of ORS 107.135(3)(a), it is apparent that the statutory standard for reconsideration, "[a] substantial change in economic circumstances of a party," does not incorporate unusual legal jargon. According to one dictionary, the "economic circumstances of a party" are the circumstances that pertain to a party's income and expenditures concerning the management of a household. *Webster's Third New Int'l Dictionary* 720 (unabridged ed 1993) (defining "economic" in part as "of or relating to a household or its management"). The word "change" refers to "an instance of making or becoming different in some particular: * * * a divergence from uniformity or constancy in any quality, quantity, or degree: ALTERATION, MODIFICATION, VARIATION * * *." *Id.* at 374. The word "substantial" means, as pertinent: "IMPORTANT * * * considerable in amount, value, or worth * * *." *Id.* at 2280.

The terms that the legislature incorporated into ORS 107.135(3)(a) and (4) reinforce the focus of the statutory standard on economic matters. Paragraph (3)(a) refers to "the cost of reasonable and necessary expenses to either party * * *." Subparagraph (4)(a)(A) refers to the "income opportunities and benefits of the respective parties from all sources" including "[t]he reasonable opportunity of each party * * * to acquire future income and assets."

The statute's text makes it clear that the statutory standard for reconsideration of a support award authorizes reconsideration if the evidence demonstrates that an alteration in a party's reasonable and necessary household expenses or income has occurred and the alteration is "important" or "considerable in amount, value or worth." The majority recognizes that the legislature's standard for reconsideration, when read in light of the ordinary meaning of its terms, "could" include a post-dissolution increase in a payor spouse's income, stating: "The post-dissolution increase in a payor spouse's income could be interpreted as a substantial change in economic circumstance if the text of the statute were our sole consideration." 337 Or at 67. The key to the threshold standard for reconsideration is whether the proven change in a party's economic circumstance is a *substantial* one. So long as the post-dissolution increase in one party's income is considerable in amount, value, or worth—and, thus, is a *substantial* change in the economic circumstances of that party—the text of the statutory standard for reconsideration is satisfied.

The evidence in the record, and especially the parties' respective incomes, which the court must consider under ORS 107.135(4)(a), satisfies the standard that the statutory text establishes. According to the evidence, when the parties dissolved their marriage in 1995, husband earned an annual income of $150,000. By 1997, husband's income had returned to its pre-1994 level and, from 1997 through 1999, husband's pretax income averaged $249,000, which is an increase of 66 percent. At the time of the modification hearing in 2000, husband estimated that his income for that year would range between $240,000 and $270,000, which is an increase of between 60 percent and 80 percent. That level of income had

permitted husband to resume the comfortable standard of living that he had enjoyed during the parties' marriage.

Wife's predissolution annual income, $9,876, had risen to $51,600 by the time of the hearing on the motion for modification, but her lifestyle had deteriorated since the dissolution. Although the trial court found that wife was "not starving," the court also found that she was living "substantially below the marital standard of living."

In the context of the parties' respective economic circumstances, a jump in husband's income of the magnitude shown here in only two years easily qualifies, in the words of ORS 107.135(3)(a), as a substantial change in husband's economic circumstances. Thus, I must conclude, on the basis of an examination of the ordinary meaning of the text of ORS 107.135(3)(a), that the trial court had statutory authority to reconsider its award of spousal support.

The majority asserts, however, and I agree, that our construction of the statutory standard for reconsideration also must take into account any judicial decisions that interpret the statutory standard. That is so, because, if the legislature adopted a statutory standard for which this court already had developed a specific legal meaning or usage, then it is probable that the legislature intended to incorporate the same meaning or usage into the statute.

Following that reasoning, the majority spends little time considering the effect of the statutory text. Instead, the majority asserts that a paragraph in *Feves* points in a different direction from the statutory text. Because a correct understanding of *Feves* is essential to permit a fair consideration of the majority's theory, I discuss *Feves* in detail.

In *Feves*, the parties divorced in 1940. The decree incorporated an agreement between the parties requiring the husband to pay alimony to the wife in the sum of $35 per month. Eight years later, the parties entered into an agreement that provided in part that the parties had agreed to delete the alimony provision from the court's decree and that the wife had agreed to accept a lump-sum payment of $500 in lieu of all demands against the husband for periodic alimony payments. The parties filed their agreement in court in 1948

and carried it out, but did not obtain the court's approval of the agreement at that time.

In 1951, the wife moved to modify the divorce decree to increase the monthly alimony payment, among other things. The husband opposed the motion and asked the court to enforce the 1948 agreement. At the hearing, the evidence demonstrated that the husband's income had increased significantly since the divorce. The trial court modified its divorce decree and granted the wife's request for an increase in alimony. The husband appealed the modification of the alimony award.

This court began by evaluating the parties' 1940 agreement that called for the commencement of alimony payments. The court held that, even though that agreement purported to settle the wife's rights against the husband for alimony, the right to alimony was based on a statute, not a contractual obligation. As a result, the original divorce decree for alimony "was subject to modification upon changed conditions[,]" *Feves*, 198 Or at 159, which was the then-prevailing standard for modification of a divorce decree. The court held that the 1948 agreement did not bind the parties because the court had not approved it, and, as a result, *"the court had jurisdiction to entertain plaintiff's motion for a modification of the decree as to alimony." Id.* at 161 (emphasis added).

On the merits of the motion for modification, the issue was whether the wife, in the parties' 1948 agreement, had waived her right to obtain a modification of the alimony award. The wife acknowledged the 1948 agreement, but argued that the husband in recent years had enjoyed a substantial increase in his annual income and that that circumstance alone was "such a change of conditions as to warrant a modification of the decree for an increase in the alimony payments." *Id.* at 162. The husband sought enforcement of the 1948 settlement agreement regarding alimony. The court noted that the husband's income had increased in the past few years.

The court characterized the wife's argument in the following terms:

> *"To support her contention that defendant's present income is the criterion for determining the amount of alimony that should be paid,* plaintiff invites our attention to the case of *Strickland v. Strickland,* 183 Or 297, 304, 192 P2d 986 [(1948)]."

*Id.* (emphasis added). In other words, the court understood the wife to claim that she was entitled to a greater alimony payment based solely on whether the husband's income had increased. After distinguishing *Strickland,* the court addressed that argument in the following passage:

> "In a motion for modification of a decree to increase or decrease the amount of alimony payments[,] the financial status of the former husband is an important factor to consider in connection with his ability to pay. *But his improved financial status, if any, does not of itself ordinarily warrant an increase, and the amount of such increase, if it be determined that an increase is necessary and proper, is usually governed by considerations different from those which apply to an original allowance at time of decree.* It is largely governed by the necessities of the former wife and the ability of the former husband to pay.

> "Divorce terminates the marital status. Thereafter, the parties bear no relation to each other. They are as strangers. But for the statute, no obligation whatever would exist for further support and maintenance of the former wife.

> "It is manifest that this statutory obligation for support and maintenance should not be so interpreted as to continue the rights of the former wife just as though no divorce had been granted. The statute does not contemplate a continuing right in her to share in future accumulations of wealth by her divorced husband, to which she contributes nothing.

> "However, under the facts of this case, we are of the opinion that the agreement between the parties entered into in July, 1948, insofar as it concerns the question of alimony, should have been approved by the trial court in this proceeding and is approved by this court. It was a fair agreement, is based upon a valuable consideration, and has been completely executed."

*Id.* at 163-64 (emphasis added). Accordingly, the court struck the modified award of spousal support because the wife, in

the 1948 agreement, had settled her claim for any future increase in spousal support.

The majority attempts to restate what it describes as the *Feves* "rule." However, the majority's description of the court's statements in *Feves* contains important errors, which, in turn, have skewed the majority's interpretation of ORS 107.135(3)(a). I explain those errors below.

The majority summarizes its reading of *Feves* in the following passages:

"In summary, based on the three principles discussed above, *Feves* held that a post-dissolution increase in a payor spouse's income 'does not of itself ordinarily' constitute a 'changed condition' justifying a reconsideration of the payor spouse's support obligation. * * *

"* * * * *

"Therefore, we conclude that, under ORS 107.135(3)(a), a post-dissolution increase in a payor spouse's income 'does not of itself ordinarily' constitute a 'substantial change in economic circumstances' requiring a court to reconsider a previous spousal support award. We now turn to a consideration of the rule's application in this case.

"As noted, there has been a post-dissolution change in husband's income as that term commonly is understood. As *Feves* makes clear, however, a post-dissolution increase in a payor spouse's income, unaccompanied by any showing of, for example, a change in the payee spouse's needs, is ordinarily not a substantial change in economic circumstances within the substantive meaning of that statutory phrase."

337 Or at 66, 68 (footnotes omitted).[2]

---

[2] I note that the passage in *Feves* that the majority attempts to synthesize (emphasized in the preceding quotation) is *obiter dictum*. The issue before the court was whether the wife's 1948 agreement was binding on her and, thus, fully settled any future claim by her to an increase in alimony payments. The court's holding was that the 1948 agreement was binding on the wife and precluded any modification. The court's discussion in the paragraph in question of the factual considerations about the parties' respective financial conditions that otherwise might support an increase in alimony had nothing to do with the legal issue whether the 1948 agreement was binding.

I disagree with the majority's interpretation of *Feves* for several reasons. The paragraph in question from *Feves* does not mention, let alone define, the phrases "change of circumstances" or "changed conditions" that reflected the contemporary standard for reconsideration of a spousal support award. That is so because the court was not addressing those legal standards in that paragraph. The court already had determined, earlier in the opinion, that the decree was "subject to modification upon changed conditions[ ]" and that "the court had jurisdiction to entertain plaintiff's motion for a modification of the decree as to alimony." *Id.* at 159, 161.

Instead, the topic that the court was discussing was the wife's argument that *she had a right to an increased alimony payment due solely to the fact that her former husband's income had increased* and that the court should determine the amount of the increased alimony payment simply by measuring the size of the increase in the husband's income. The court disagreed with the first of those arguments, stating that the former husband's "improved financial status, if any, does not of itself ordinarily warrant an increase * * *."[3] *Id.* at 163. In other words, the wife's bare assertion that the husband's income picture had improved did not entitle the wife, *ipso facto*, to a larger alimony payment.

The court also disagreed with the second of the wife's arguments about the proper measure for determining the amount of any increase, stating:

> "[T]he amount of such increase, if it be determined that an increase is necessary and proper, is usually governed by considerations different from those which apply to an original allowance at time of decree. It is largely governed by the necessities of the former wife and the ability of the former husband to pay."

---

[3] Neither *Feves* nor the majority opinion provides any clear explanation of the meaning or effect of the word "ordinarily" in the quoted passage. The reader cannot determine from that term how to distinguish an "ordinary" post-dissolution increase in one spouse's income from an increase in income that is not "ordinary." That circumstance is likely to lead to confusion and an unfortunate increase in litigation in the lower courts, because the majority opinion effectively engrafts the adverb "ordinarily," with all its inherent ambiguity, onto the statutory threshold for reconsideration of spousal and child support awards in ORS 107.135(3)(a).

*Id.* It is important to note that the factors that the court mentioned in that passage logically could be relevant to the court's analysis only *after* the court already had determined that "changed conditions" existed, thus justifying reconsideration, and *after* the court had determined that an increase in alimony in some degree was necessary and proper.

I agree that not every post-dissolution increase in one party's income calls for an increase in spousal support. And, because the parties no longer are married, the court, after deciding that an increase is necessary and proper, must apply different criteria in setting the amount of the increase from those that determined the amount of the existing spousal support award. But the majority takes those points out of their proper context in reading *Feves* to establish a demanding threshold standard for the reconsideration process, especially one that contravenes the plain terms of Oregon's current statute.

To illustrate the last point, the text of ORS 107.135(3)(a) authorizes reconsideration on a showing of a substantial change in economic circumstances of one party. In this case, husband experienced a 66 percent increase in income in just two years after the dissolution and even greater increases in subsequent years. Even though those increases were exceptional by almost any definition, the majority holds that the evidence does not meet the threshold standard in the statute for reconsideration. Additionally, the statute clearly calls for the application of the "substantial change" standard to the economic circumstances of *either* party. The majority, however, determines that the evidence did not meet the statutory threshold for reconsideration because that evidence focused only on husband's increase in income and did not include a showing of wife's needs. Those conclusions contradict, rather than support, the legislative policy on reconsideration that the statute's words reflect.[4]

---

[4] The majority notes in a footnote that the statutory standard that determines whether the court may reconsider a spousal support award applies with equal force to the reconsideration of an award of child support. 337 Or at 68 n 8. The majority asserts, however, that the legislature has created other statutes that assist the court in determining the amount of child support that the parents should pay, citing ORS 25.270 to 25.290. It is true that those statutes obligate the state to develop a formula for determining child support in judicial proceedings, ORS 25.275, and

The majority explains that the parties agreed to a level of support at the time of the dissolution and should have bargained for a different allowance for spousal support if husband's income potential improved. But, as *Feves* explained, a spouse's right to support and the right of either spouse to seek reconsideration of a support award on changed conditions are protected by a statute. This court cannot disregard the legislature's statutory process for reconsideration because the party seeking reconsideration could have bargained for better terms regarding support at the time of dissolution.

Even when considered on its own terms, the majority's proposed statutory interpretation does not withstand analysis. The majority's premise is that, on these facts, the court-created "changed conditions" standard, discussed in *Feves*, allowed reconsideration only if wife established *each of two* factual predicates, that is, *husband's ability to pay* additional spousal support and *wife's need* for additional spousal support. Assuming arguendo that that premise is correct, the majority fails to acknowledge that the legislature's later enactment, ORS 107.135(3)(a), authorizes reconsideration if only *one* former spouse's economic circumstances have changed substantially. The majority never returns to the statutory text—the critical key to the legislature's intent—to resolve the conflict between the "rule" that the majority draws from *Feves* and the clearly different rule that the current statute creates. Instead, the majority concludes that "the legislature intended to include the *Feves* rule within the substantive meaning of the statutory phrase, 'substantial

---

that, in a judicial proceeding for modification of a child support obligation under ORS chapter 107, the amount of support that the child support formula establishes is presumed to be the correct amount of the obligation, ORS 25.280.

The problem that the majority fails to consider is that the legal standard in ORS 107.135(3)(a) for reconsideration of a spousal or child support award applies at the *threshold* of the reconsideration process, whereas the child support formula mentioned above applies *during* a judicial child support modification proceeding. In a proceeding seeking reconsideration of a child support award, the evidence first must establish a "substantial change in economic circumstances" under ORS 107.135(3)(a) before the court can consider the effect of the child support formula. As a consequence, the high barrier to reconsideration that the majority erects in this spousal support context will apply with equal force to prevent reconsideration of awards of child support. In those cases, the failure of the evidence to satisfy the majority's high threshold standard for reconsideration will obviate the need to resort to child support formulas to determine a correct amount for child support.

change in economic circumstances.' " 337 Or at 68. That quotation of the statute omits the critical statutory phrase, "of a party," and the majority ignores that phrase in its analysis of the statute. Only by disregarding the significance of that statutory phrase is the majority able to conclude, in accordance with its reading of *Feves*, that wife's evidence was insufficient because, although she proved that husband experienced a significant post-dissolution increase in income, she failed to prove her need for additional spousal support. 337 Or at 68-69. It is clear that the statute does not demand that sort of proof. The majority's conclusion demonstrates yet again that this court acts at its peril when it announces a statute's meaning without first giving effect to all its words.

For the reasons stated above, I conclude, in accordance with the decisions of the trial court and Court of Appeals, that wife's factual showing of a "substantial change in economic circumstances of a party," ORS 107.135(3)(a), was sufficient to authorize reconsideration of the spousal support award. Moreover, on the basis of the facts explained in greater detail in the decision of the Court of Appeals, I conclude that the trial court's upward adjustment of the award of support was correct. In particular, the evidence demonstrates that husband's increased income resulted from market conditions in his professional field over which he had no control, not from additional professional training or extra work on his part. The parties were married for approximately 24 years. Husband developed his income-earning capacity during the marriage with wife's support.[5] Husband experienced a significant drop in income during only one year of the

---

[5] *Feves* states:

"The statute does not contemplate a continuing right in [the wife] to share in future accumulations of wealth by her divorced husband, *to which she contributes nothing*."

*Id.* at 164 (emphasis added).

The emphasized portion of that sentence serves to distinguish this case from the point that the *Feves* court sought to make. Unlike a post-dissolution increase in wealth to which the former wife truly contributes nothing, such as, for example, a lottery jackpot, the post-dissolution increase in husband's wealth here was attributable solely to his earning power in the medical profession. Wife helped to create and support husband's earning capacity during the parties' 24-year marriage and, therefore, contributed significantly to husband's capacity to increase his income after the dissolution.

marriage: the final year. As a result of the rapid and significant increase in husband's post-dissolution income due solely to market factors in the medical profession, he again enjoys the high standard of living that he enjoyed during the marriage; wife's standard of living, by contrast, is significantly below that which she experienced during the marriage. Under the facts of this case, the trial court's upward adjustment in the spousal support award was not erroneous.

I respectfully dissent.