Argued and submitted December 3, 2004, attorney fee award vacated and remanded; otherwise affirmed April 27, appellant's petition for reconsideration filed May 4, and respondent's response to petition for reconsideration filed June 1 allowed by opinion July 13, 2005

See 200 Or App 582 (2005)

## In the Matter of the Marriage of

## Michael C. NIETH,
*Appellant,*

*and*

## Cindy J. NIETH,
*Respondent.*

### 98C33984; A122979

111 P3d 746

Paul G. Dodds argued the cause for appellant. With him on the briefs was Brownstein, Rask, Sweeney, Kerr, Grim, DeSylvia & Hay, LLP.

Sarah A. Matheny argued the cause for respondent. On the brief were William C. Crothers, Jr. and Crothers, Hansen P.C.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

The 1999 dissolution judgment in this case awarded no child support to either party for their two minor daughters. Approximately four years later, mother moved for an order to show cause why the judgment should not be modified to award child support to her. The trial court found that a change in circumstances had occurred, ordered father to pay support, and awarded mother attorney fees. Father appeals from both the judgment ordering modification and the judgment awarding attorney fees. On *de novo* review, ORS 19.415(3) (2001),[1] we affirm the child support modification. Reviewing the award of attorney fees for abuse of discretion, ORS 20.075(3), we vacate and remand.

Mother and father stipulated to a judgment dissolving their marriage on June 24, 1999. The judgment addressed custody and child support with respect to the couple's two minor children, Elizabeth, then 16, and Serena, then 10.[2] Regarding custody, the judgment provided, in part:

"5. (a) The parties are fit and proper persons to be awarded the joint legal custody of their minor children. Since ELIZABETH NIETH has chosen to live with [father] and SERENA NIETH has chosen to live with [mother], [father] shall have the physical custody of ELIZABETH NIETH and [mother] shall have the physical custody of SERENA NIETH. As the parties live about a mile apart, by agreement of the parties, the children are allowed to move back and forth between households of [father] and [mother], and to reside with either parent.

"(b) In the event that a problem arises between [mother] and [father] wherein paragraph 5(a) is not working as the parties plan, or a party moves, the parties shall continue to have joint custody with [father] having physical custody of ELIZABETH NIETH and [mother] having physical custody of SERENA NIETH."

---

[1] We apply the 2001 version of the statute because the judgment was entered before the effective date of the 2003 version.

[2] The judgment made no arrangements for the custody or support of a third daughter, Andrea, then 20.

Two sections of the judgment addressed child support. The first was a finding of fact involving the couple's debts, in particular father's debt on a house he owned (wife owned a separate house):

> "[Father] has refinanced his home, thereby adding greater debt in order to pay the credit card debts and other debts of the parties. As a result, [father's] unpaid balance of his note and trust deed is about $32,500.00 greater than [mother's]. In addition, [father] is paying a greater percentage of the medical bills not covered by insurance. The parties have structured their debts this way with the agreement and understanding that no child support would be paid by either party."

The second relevant section "ordered, adjudged, and decreed" as follows:

> "<u>Child Support</u>. Neither party shall pay child support to the other. This is based on the fact that [father] has undertaken an additional $32,000 in debt greater than [mother] and has agreed to pay a greater percentage of uninsured medical bills. The debt shall be considered prepaid child support."

(Underscoring in original.) The parties also added the following explanation in the space for comments, calculations, or rebuttals on the Support Computation Worksheet:

> "The parties have agreed that [father] pay no offsetting amount of support for the following reasons: (1) [father] took on greater marital debts than [mother]; (2) [father] is paying greater percentage of medical bills not covered by insurance; and (3) [Andrea,] the 20 year old daughter is living with [father]."

For several years, the daughters apparently lived together, half time with each parent. Neither party paid child support.

In the spring of 2001, father moved to a house some 30 minutes' drive from his previous residence and from mother. At approximately the same time, Elizabeth turned 18, finished school, and moved out of father's house. Shortly thereafter, mother and father agreed that Serena would spend less time at father's house because the commute was becoming difficult. Instead of spending half of her time with father, Serena began spending only every other weekend

with him. As a result of this change, father began voluntarily paying mother $100 per month to contribute to Serena's support. Mother received the monthly payments from September 2001 until March 2003, when, in the proceeding from which this appeal stems, she sought (and the trial court ordered) a modification of child support requiring father to make monthly payments of $377.09 per month.

Modification of a child support order may occur when there has been a "substantial change in economic circumstances of a party, which may include * * * a substantial change in the cost of reasonable and necessary expenses to either party[.]" ORS 107.135(3)(a). Further, the change in circumstances must not have been anticipated at the time of the judgment. *Harden and Harden*, 67 Or App 687, 690, 679 P2d 348, *rev den*, 297 Or 339 (1984). If the trial court finds that a substantial unanticipated change in economic circumstances has occurred, it must then determine the presumptive amount of child support under the guidelines mandated in ORS 25.270 to 25.285 and OAR 137-050-0330. *Perlenfein and Perlenfein*, 316 Or 16, 24, 848 P2d 604 (1993). Only after the presumptive amount is determined may the court consider rebuttal factors and depart from that amount. ORS 25.280; OAR 137-050-0330(2)(b); *Larkin and Larkin*, 146 Or App 310, 314-15, 932 P2d 115 (1997).

In his reply brief, father, for the first time, argues that "[s]ince [mother] never pleaded the increase in [father's] income as a ground for modifying the Stipulated Judgment, she cannot now raise this argument as a reason to support the Amended Judgment." "Increase in income," however, is neither what the law requires, what mother proved, nor what the trial court found; the proper criterion is "change in economic circumstances." ORS 107.135(3)(a). Mother's pleadings adequately claim a change in economic circumstances.

ORCP 14 A, which pertains to motions, provides:

"An application for an order is a motion. Every motion, unless made during trial, shall be in writing, shall state with particularity grounds therefor, and shall set forth the relief or order sought."

Additionally, regarding judgment modification proceedings, UTCR 8.050(1) provides:

> "Modification proceedings must be initiated by an order to show cause based on a *motion supported by an affidavit setting forth the factual basis for the motion* or by other procedure established by SLR. When support is to be an issue, a Uniform Support Affidavit, as set out in Form 8.010.5 in the UTCR Appendix of Forms, must also be filed with the motion and completed as provided under subsection (5) of UTCR 8.010."

(Emphasis added.)

Mother's motion and the affidavit supporting it set out the legal and factual theories underlying mother's position. The motion states that it "is based upon ORS 107.135 and supported by the affidavit of [mother] filed herewith." The affidavit provides, in part:

> "[Father] no longer has the obligations of maintaining a residence for any of our children, *nor does he have the financial burdens assessed to him in the stipulated judgment.* I have no money with which to pay my attorney fees, and limited funds to support our daughter, Serena. I work part time and attend Chemeketa Community College. My gross income, including food stamps and a school grant, is less than it was at the time of the entry of the stipulated judgment. [Father] is employed as a food broker and *I believe his income to be at least as much as he was earning at the time of the divorce.*"

(Emphasis added.) Although the affidavit does not state in succinct terms that mother is seeking modification based on a change in economic circumstances, it states that father has fewer financial burdens and at least the same income, while mother has less income. Those assertions are sufficient.

Further, mother took steps that put father on notice that his income was going to be an issue. A letter in the record from mother's attorney to father's attorney dated May 28, 2003, refers to a voice mail message in which father's attorney asked for an explanation of mother's theory of modification. Mother's attorney responded by directing father's attorney to the pleading affidavit and stated that he believed that the theory was explained there.

That letter also contained a discovery request as an enclosure. The first three documents requested are:

"1. All federal and state income tax returns filed by you for the past two (2) calendar years.

"2. All records with respect to all income earned by you and your spouse during the last fiscal or calendar year, if income tax returns for that year have not yet been filed, including but not limited to, all W-2 statements, year-end payroll statements, interest and dividend statements, and all other records of income earned or received by either party during the last calendar year.

"3. All records with respect to all income earned by you and your spouse from January first of this year to date."

On August 6, 2003, the day before the hearing, mother filed her trial memorandum in which she argued that a change in incomes was a basis for modification.

"[Father's] income has increased from a gross income of $2,400 to $2,864 per month, while [mother's] income has decreased from $1,400 per month to a gross income of $1,252 per month.[3] These facts suggest that a substantial change in economic circumstances has taken place that was unforseen by the parties at the time of dissolution."

Under these circumstances, we reject father's belated argument that mother's pleadings were inadequate. On the merits, father states, "The only issue to be resolved in the present proceeding is whether [mother] has demonstrated a substantial and unanticipated change in circumstances sufficient to warrant modifying the Stipulated Judgment." He does not argue that, if mother has demonstrated such a change, the trial court erred in its calculation of the amount of child support.

■    Father challenges all three possible bases that could underlie a finding of changed circumstances: a change in Elizabeth's status from child living with father to adult living on her own, a decrease in the percentage of time Serena spent with father (and hence the amount of her expenses he incurred), and a post-dissolution increase in father's income.

---

[3] At the hearing, the parties agreed that mother's income *increased* to $1,652 per month.

We agree with father that Elizabeth's attaining the age of majority, although a significant change in circumstances, cannot have been unanticipated at the time of the dissolution. The parties obviously knew that the obligation to support her would end before the obligation to support her younger sister ended. Even if Elizabeth had stayed in school until the age of 21, the support obligation with respect to her would have expired three years before the earliest date it could expire for Serena.

Further, the reduction in the amount of time Serena spent living with father, and hence the reduction in the expenses he incurred in housing and feeding her after he moved, was not unanticipated. The stipulated judgment, as noted above, allows the children "to move back and forth between households of [father] and [mother], and to reside with either parent." The stipulation never contemplated that each party would incur the same amount of parenting expenses; thus, the fact that, at the time of the motion for modification, father was incurring less expense than he did at the time of the dissolution is not an unanticipated change. *See Barron and Barron*, 85 Or App 278, 281, 736 P2d 583 (1987) (refusing to increase spousal support award on basis that husband's expenses decreased when children were emancipated because that change was not unanticipated).

We reach a different conclusion, however, with respect to the change in income. As the Supreme Court explained in *Weber and Weber*, 337 Or 55, 68 n 8, 91 P3d 706 (2004), although the statutory phrase "substantial change in economic circumstances" applies to modifications of both child support and spousal support, the criteria for modification of the two kinds of support are "substantially different * * *, because the family relationships are different." *Id.* The initial spousal support determination is based on the parties' predissolution standard of living. *Id.* at 65. An upward modification of spousal support is not based on the improved financial condition of the obligor; rather, it "is based more properly on considerations of the payee spouse's increased needs and the payor spouse's concomitant ability to meet them." *Id.* at 65-66.

■　　The policy behind child support is different. ORS 25.275(2)(a) provides that a "child is entitled to benefit from the income of both parents to the same extent that the child would have benefitted had the family unit remained intact or if there had been an intact family unit consisting of both parents and the child." Unlike spousal support, the objective of which is to freeze and preserve the parties' predissolution standard of living, child support retains more flexibility. For example, child support modification proceedings occur in two-year cycles. ORS 25.287. Because a child support award is an attempt to simulate the economic benefits that the child would enjoy had the family remained intact, modification based solely on a change of the economic circumstances of the obligor is not necessarily improper. *See Weber*, 337 Or at 68, 68 n 8.

　　Since the dissolution, not only has father's income increased, but so has mother's. At the time of the original judgment, father's monthly income was $2,400, and mother's was $1,400, resulting in a total combined monthly income of $3,800. Approximately four years later, father was earning $2,864 and mother was earning $1,652, a combined monthly income of $4,516. That represents an increase of $716, or 19 percent. That is substantial, and, on the facts in this case, we conclude that the increase should translate into benefit for the minor child. Father's increase accounts for 64 percent of the total; we therefore also conclude that ordering him to pay child support was fair and equitable.

■　　Father's second assignment of error involves attorney fees. ORS 107.135(8) permits a discretionary award of attorney fees and costs in modification cases and requires an award in such cases if a party is found to have acted in bad faith. Pursuant to that statute, the trial court awarded mother $5,118 in attorney fees and costs. Father argues that the amount of the award was an abuse of discretion.

■　　The trial court must consider the statutory factors set forth in ORS 20.075(1) when awarding discretionary attorney fees. Further, in *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 187, 957 P2d 1200 (1998), the Supreme Court held that, in order to permit meaningful and efficient appellate review, lower courts must identify the relevant facts and

legal criteria on which they rely in awarding discretionary attorney fees. *See also Baker and Baker*, 173 Or App 33, 20 P3d 263 (2001) (extending *McCarthy* standard to discretionary attorney fee awards pursuant to ORS 107.135). A trial court satisfies this obligation by "including in its order a brief description or citation to the factor or factors on which it relies" or by clearly indicating the basis of its decision in the record. *McCarthy*, 327 Or at 188.

In her statement for attorney fees, mother listed relevant factors and provided supporting facts and arguments under each. The first two factors in ORS 20.075(1), and mother's statements pursuant to them, are written in her statement for attorney fees as follows:

"(a) *The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.* [ORS 20.075(1)(a).] See [mother's] letter of June 28, 2003 to [father's] attorney, which is attached, marked Exhibit 2, and made part of [mother's] attorney fee statement by this reference. [Mother] continually sought to prevent unnecessary actions and their associated costs from accumulating in this matter, but on each occasion, [father] repeatedly refused to follow such recommendations.

"(b) *The objective reasonableness of the claims and defenses asserted by the parties.* [ORS 20.075(1)(b). Mother] sought only to obligate [father] to pay the amount of child support presumed by Oregon's Child Support Guidelines. [Father] has willfully failed to pay *any amount* to [mother] and as a direct result, [father] has forced this unnecessary hearing and its associated attorney fees and costs."

(Emphasis in original.) The trial court did not make specific findings indicating whether it relied on the first or the second factor or on both.[4] Further, the record from the hearing on attorney fees is not helpful. At one point, the court implied that the relevant factor was ORS 20.075(1)(b), involving reckless, willful, malicious, bad faith, or illegal conduct by

---

[4] It is also possible that the trial court determined that father acted in bad faith and therefore awarded attorney fees and costs based on the mandatory prong of ORS 107.135(8). However, since there is no indication to that effect, we think it is more likely that the award was based on ORS 20.075(1)(a) or (b).

father in attempting to forestall mother from filing for a modification by paying her $100 per month—payments that stopped after she began the modification action. However, when he ordered the award, the trial judge stated the following:

> "There's—it's—you're hard pressed to find malicious or bad faith or illegal or anything like that, but certainly the objective reasonableness of the claims and defenses by the parties, as you look at it in hindsight, favors the [mother]. She should be entitled to her fees. And since there's no objection to the reasonableness, she should be entitled to the extent of her fees."

We are unable to discern whether the trial court awarded fees to mother based on paragraph (1)(a) or on paragraph (1)(b) of ORS 20.075. We therefore remand to the trial court for a more explicit explanation of the attorney fee award so that we may review the award for abuse of discretion without speculating as to its justification.

Attorney fee award vacated and remanded; otherwise affirmed.